**Renee M. JORDAN, Jacqueline Black, Plaintiffs,**

v.

**Richard RILEY, as Secretary of Education of the United States, et al., Defendants.**

**No. CIV. A. 97–876(HHK).**

United States District Court, District of Columbia.

Nov. 12, 1998.

---

Michael Tankersley, Public Citizen Litigation Group, Washington, DC, for Plaintiffs.

Meredith Manning, Assistant United States Attorney for the District of Columbia, Washington, DC, for Defendants.

David Ober, Reed, Smith, Shaw & McClay, Washington, DC, for Defendant Nebraska Student Loan Program.

Samuel Walker, Wiley, Rein & Fielding, Washington, DC, for Defendant United Student Aid Funds, Inc.

Alexandra Gil–Montero, Fred Marinucci, United States Department of Education, Washington, DC.

## ORDER

KENNEDY, District Judge.

Pursuant to Fed.R.Civ.P. 58 and for the reasons set forth in the memorandum that accompanies this judgment, it is this 12th day of November 1998, hereby

ORDERED and ADJUDGED that judgment is entered in favor of the defendants; and it is further

ORDERED AND ADJUdGED that the complaint in this case is dismissed.

## MEMORANDUM OPINION

The Secretary of Education has been directed by Congress to discharge a borrower's liability on a Federal Family Education Loan if the borrower's Joan eligibility "was falsely certified by the eligible institution." 20 U.S.C. § 1087(c)(1). At issue in this case is the Secretary's implementation of this statute. 34 C.F.R. § 682.402(e). The remaining

plaintiff,[1] Renee M. Jordan, argues that the Secretary's regulation is unlawful because it plainly contradicts the language of the statute by adding a requirement for a borrower to obtain relief. She seeks declaratory and injunctive relief.

Presently before the court are the parties' cross-motions for summary judgment on a complaint for declaratory and injunctive relief. Upon consideration of the motions, the responses thereto, and the entire record of this case, the court concludes that the defendants are entitled to summary judgment.

## I. BACKGROUND

The Higher Education Act of 1965, 20 U.S.C. §§ 1070—89, established the Guaranteed Student Loan Program, now the Federal Family Education Loan ("FFEL"). Under this education loan program, "eligible borrowers" can receive loans from private lenders to attend eligible post-secondary institutions. State and private guaranty agencies insure the loans, and the Secretary of Education (the "Secretary") insures the guaranty agencies. The Secretary is authorized to issue regulations to carry out the purposes of the corresponding statute. 20 U.S.C. § 1082(a)(1).

Typically, "eligible students" are students with high school diplomas or General Education Development certificates (GEDs). A student failing to meet this requirement may nonetheless qualify to receive an education loan to attend an eligible vocational institution if that institution certifies that the student has the "ability to benefit" from the school's training. 20 U.S.C. §§ 1085(c) (1990) & 1091(d) (1997). In 1987, when Jordan received her education loan, institutions determined "ability to benefit" based on the student's performance on a test. Institutions could also certify a student's ability to benefit if the student received her GED or successfully completed a remedial education program provided by the institution. 34 C.F.R. §§ 682.402(e)(13)(i) & (ii)(C).

In the late 1980s, Congress investigated widespread allegations of fraud among vocational institutions in certifying students as eligible for education loans. Congress heard testimony that some vocational institutions would improperly administer "ability to benefit" tests, allowing the institutions to then certify to the Department of Education that students who had *not* demonstrated an "ability to benefit" were eligible for guaranteed student loans. As a result, many students graduated in debt while lacking the skills needed to obtain employment.

Congress responded to this problem in the 1992 reauthorization of the Higher Education Act. The 1992 amendments mandated that the Secretary of Education discharge liability on a guaranteed education loan received on or after January 1, 1986 if the "student's *eligibility to borrow* ... was *falsely certified* by the eligible institution." 20 U.S.C. § 1087(c)(1) (emphasis added).[2]

The Secretary promulgated regulations to implement these amendments. These regulations allow a student to apply for a loan discharge based on the school's defective testing of the student's ability to benefit. 34 C.F.R. § 682.402(e)(3)(ii). The student, however, must make two showings: first, that she was admitted to the school "on the basis of ability to benefit from its training and did not meet the applicable requirements for admission," and second, that she had made reasonable yet unsuccessful attempts to find employment upon completion of the training program. *Id.*

## II. FACTS

On September 30, 1987, Renee Jordan enrolled in a program in the National Business School's Law Enforcement Academy (the "Academy"). Compl. ¶ 14. She completed the program and received a diploma on April 8, 1988. Pl.Ex. 6. Despite the fact that Jor-

---

1. Plaintiff Black's request for loan discharge was granted on July 11, 1997 and August 19, 1997. Accordingly, Black's claims will be dismissed as moot and Jordan is the sole plaintiff in this case.

2. This section also requires the Secretary of Education to discharge a student's liability on a guaranteed student loan if the student "is unable to complete the program in which such student is enrolled due to the closure of the institution." 20 U.S.C. § 1087(c)(1).

dan neither possessed a high school diploma nor a GED and had not passed an "ability to benefit" test, the Academy certified her eligibility to receive a guaranteed student loan. Jordan Decl. ¶ 4. Jordan signed a loan for $2625, of which she has repaid $900. Jordan has requested a discharge of this loan from the Secretary and from the Nebraska Student Loan Program, the agency which guaranteed her loan, pursuant to 20 U.S.C. § 1087(c). Jordan's request was denied pending a demonstration that she *"made three separate attempts* to secure employment in her field of study." Pl.Ex. 7 (emphasis in original).[3] Because Jordan could present evidence of only one attempt to find employment,[4] her request for a discharge was denied. Jordan requests declaratory and injunctive relief invalidating the "reasonable attempt to find employment" provisions of 34 C.F.R. § 682.402(e)(3)(ii)(C) under the Administrative Procedure Act, 5 U.S.C. § 706.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if and only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322 n. 3, 106 S.Ct. 2548. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### IV. DISCUSSION

The Supreme Court's holding in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), provides the standard framework for judicial review of administrative agencies' implementation of statutes under the Administrative Procedure Act. First, the court determines whether Congress has unambiguously expressed its intent in the statute itself. Second, if the intent is unclear, the court determines

---

3. The "three separate attempts" language comes from a memorandum by Elizabeth M. Hicks, Deputy Assistant Secretary for Student Financial Assistance, for the guidance of guaranty agencies regarding what constitutes a reasonable attempt to obtain employment:

> Ordinarily, a person who makes a reasonable attempt to obtain employment does not limit his or her job search to only one such effort. More commonly, an individual will try several times to obtain employment in a specific occupation. Therefore, if there are no unusual circumstances faced by a specific individual, it would be reasonable for a guaranty agency to consider three separate attempts by the student to find a job as a persuasive indication of the student's good faith effort.

See Def. Ex. 1, Department of Education, GEN–95–42, *Loan discharges based on improper determination that a student had the ability-to-benefit (ATB) from the school's training,* at 8 (Sept.1995).

4. Jordan alleges that she looked for employment by answering one newspaper ad for a security officer position but that she was "turned away by a man" who said she would have to start at an "unacceptably low" salary because she did not have a GED. Jordan Decl. ¶ 6. The Secretary concluded that Jordan had found a job as a result of her one attempt and turned it down. Jahnke Decl. ¶ 6. On the Secretary's motion to dismiss, however, the court views these facts in the light most favorable to Jordan, and construes Jordan's account as an unsuccessful attempt to obtain employment.

whether the agency has provided a permissible interpretation.

## A. Ambiguity of the Statute

■ In determining whether the statute is ambiguous, the court is to decide "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778. If there is " 'any gap left, implicitly or explicitly, by Congress,' " the agency has authority to formulate policies and make rules as necessary to administer the program created by Congress. *Id.* at 843, 104 S.Ct. 2778 (quoting *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974)).

■ The precise question at issue concerns the circumstance where a student's eligibility to borrow under the statute was based on a determination of the student's "ability to benefit" under the regulations applicable in this case, 34 C.F.R. § 682.402(e)(13). It is unclear in this situation how, if at all, a student applying for a loan discharge can show that the school "falsely certified" the student's eligibility to borrow, as required by 20 U.S.C. § 1087(c)(1), because Congress provided no implicit or explicit standard for reviewing the truth of an "ability to benefit" determination. Since the intent of the statute is unclear, the court should proceed to the second step of the *Chevron* analysis.

## B. Rationality and Consistency of the Regulation

■ The court is obliged to give "controlling weight" to the agency's construction of a statute, *Chevron*, 467 U.S. at 844–45, 104 S.Ct. 2778. Thus, the court should uphold the agency's construction if it is "rational and consistent" with the statute. *NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112, 123, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987). The precise standard of review depends on whether Congress explicitly or implicitly left a gap for the agency to fill. If the gap is explicit, the agency interpretation controls unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778 (quoting Administrative Procedure Act, 5 U.S.C.A.

§ 706(2)(A)). If the gap is implicit, the agency interpretation is permissible so long as it is "reasonable." 467 U.S. at 843, 104 S.Ct. 2778.

■ The statute at issue here does not expressly delegate rulemaking authority regarding the meaning of "falsely certified," and so the reasonableness standard is applicable. In determining whether an agency's interpretation is reasonable, the court should refer "both to the agency's textual analysis (broadly defined, including where appropriate resort to legislative history) and to the compatibility of that interpretation with the Congressional purposes informing the measure." *Continental Air Lines, Inc. v. Dept. of Transportation*, 843 F.2d 1444, 1449 (D.C.Cir.1988).

### 1. The Purpose of the Statute

■ The relevant legislative history indicates that Congress's purpose in enacting the loan discharge provisions of § 1087(c)(1) was to help students who, at the time they signed their loans, had received misinformation about their expectations of improving their employment prospects. During the 1992 reauthorization of the Higher Education Act, the House Committee on Education and Labor expressed concern that students who had been falsely certified as eligible for federal loans or whose schools had closed were "left without the skills needed to obtain employment" and consequently lacked the means to repay the loans. H.R.Rep. No. 447, 102nd Cong., 2nd Sess., at 52.

■ When Jordan enrolled in the Academy and signed her loans, she was entitled to an objective expectation that the program would improve her employment prospects. Under the statute applicable when Jordan enrolled in 1987, the Academy's eligibility for the FFEL program was based on its status as a § 1085(c) vocational school. *See* 20 U.S.C. § 1085(a)(1)(B) (1987). As such, the Academy was required to provide "a program of postsecondary vocational or technical education designed to fit individuals for useful employment in recognized occupations." 20 U.S.C. § 1085(c)(2) (1987). Thus, in reviewing Jordan's claim for relief, the

Secretary should employ regulations that are rationally related to determining whether Jordan in fact had an objective expectation of improving her employment prospects at the time she enrolled; i.e., an "ability to benefit" from the program.

### 2. The Secretary's Regulations

To determine Jordan's actual expectation of improving her employment prospects at the time she enrolled, one would have to predict and compare the likelihood of Jordan's obtaining employment following graduation with the corresponding likelihood in a hypothetical world in which she did not enroll. The Secretary's regulations are a rational approach to what would otherwise be an intractable analysis.

 Those regulations require that a student who completed the training program for which the loan was made, in order to obtain a loan discharge based on a school's false certification of her ability to benefit, must make "a reasonable attempt to obtain employment in the occupation for which the program was intended to provide training." 34 C.F.R. § 682.402(e)(3)(ii)(C). Such effort must be either unsuccessful or successful only after the student received additional training that was not provided by the school that certified the loan. *Id.*

An unsuccessful attempt to find employment provides relevant statistical evidence that a student's actual likelihood of obtaining employment was low relative to her prior expectations. *See generally* Richard O. Lempert, *Modeling Relevance*, 75 Mich. L.Rev. 1021 (1977) (explaining legal rules of evidence in terms of principles of Bayesian statistical inference); *cf.* Thomas D. Lyon & Jonathan J. Koehler, *The Relevance Ratio*, 82 Cornell L.Rev. 43, 46 (noting that evidence that a child suffered a symptom is relevant for proving abuse if the presence of the symptom increases the likelihood that abuse actually occurred). This mathematical fact was expressed in the Secretary's finding that "the ability of a student to obtain employment in the occupation for which the student's program was intended to provide

training is evidence that the student was able to benefit from the education received, even though the school may have improperly tested, or failed to test, the student's ability to benefit from the training." 59 Fed.Reg. 22462, 22471 (Apr. 29, 1994).

Despite its relevance, however, a single failure to obtain employment has only slight probative value in estimating the long-run likelihood of success. A sample size of one is too small for this purpose. To support the finding that a student had no expectation of improving her employment prospects at the time of enrollment, repeated unsuccessful attempts to obtain employment may be necessary. *Cf. Teamsters v. United States,* 431 U.S. 324, 340 n. 20, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) ("Considerations such as small sample size may, of course, detract from the value of such evidence ..."); *Philadelphia v. Educational Equality League,* 415 U.S. 605, 619–21, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974) (finding racial composition of a single committee, presented as statistical evidence, to be "too fragmentary and speculative" to support finding of discrimination).[5]

The Secretary describes the guideline of three separate unsuccessful attempts as "a very low standard" for showing that a student was unable to benefit from her training. The court agrees. Insofar as the Congressional purpose behind the loan discharge provision was to align students' financial outcomes with the loan program's overall goal of improving their prospects of employment, it was reasonable for the Secretary to establish minimum standards for evidence directed to evaluating those prospects.

 The court concludes that the "reasonable attempt to find employment" provisions of 34 C.F.R. § 682.402(e)(3)(ii)(C) are a permissible interpretation of the burden of proof required for a student to obtain a false certification discharge under 20 U.S.C. § 1087(c)(1). The Secretary's regulation has a rational basis and is compatible with Congress's purpose in enacting the statute. In this case, where Jordan presented evidence of only one unsuccessful attempt to obtain

---

**5.** Disparate impact employment discrimination cases are analogous here because the hypothesis

being tested is that the school's training was a factor in hiring decisions (albeit a positive one).

employment, the court finds that it was reasonable for the Secretary to find that Jordan had not yet[6] shown an inability to benefit.

### V. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment must be granted, plaintiff Jordan's motion for summary judgment must be denied, and plaintiff Black's claims must be dismissed as they are moot. An appropriate order accompanies this memorandum.

---

6. The Secretary notes that "nothing precludes Ms. Jordan from again attempting to find employment as a security officer and submitting another request to the Secretary for loan discharge based upon the failure of those attempts." Def.'s Reply to Pl.'s Opp. to Def.'s Mot. Summ. J. at 10 n. 6.