Renee M. JORDAN, Appellant,

v.

SECRETARY OF EDUCATION OF THE UNITED STATES and Nebraska Student Loan Program, Appellees.

No. 99–5024.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 25, 1999.

Decided Nov. 16, 1999.

Michael E. Tankersley argued the cause for appellant. With him on the briefs was Alan B. Morrison.

Meredith Manning, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

David Ober was on the brief for appellee Nebraska Student Loan Program.

Before: SILBERMAN, GINSBURG, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Renee Jordan sought a discharge of her federally guaranteed student loan because the vocational school she attended had falsely certified her ability to benefit from its training. The holder of her loan refused, and the Secretary of Education denied her appeal, on grounds that she failed to satisfy a regulation that requires students seeking a discharge to demonstrate an inability to find a job. When Jordan sued the Secretary, the district court granted summary judgment against her. We hold that the regulation is inconsistent with the governing statute, and thus reverse.

### I.

Under the Federal Family Education Loan Program, private lenders make loans for "eligible borrowers" to attend "eligible" post-secondary institutions. *See* 20 U.S.C. § 1071 *et seq.*[1] State and private guaranty

---

1. We discuss the statute as it existed at the time of the events at issue in this case. Con-

agencies insure the loans, and the Secretary of Education reinsures the agencies. Generally, eligible borrowers are those who have a high school diploma or a GED. However, an individual without a diploma or GED may qualify to attend a vocational school if the school certifies that she has the "ability to benefit" from the training it provides. Under § 1091(d), a student may demonstrate an ability to benefit in one of three ways: (1) by earning a GED before graduation from the program or by the end of the first year of study; (2) by being counseled before admission and completing a prescribed program of remedial education; or (3) by passing "a nationally recognized, standardized or industry developed test" that measures "the applicant's aptitude to complete successfully the program to which the applicant has applied."

In 1992, in response to public concern about vocational schools that defrauded students by falsely certifying their ability to benefit and then providing them worthless training, Congress provided that if a "student's eligibility to borrow under this part was falsely certified by the eligible institution ... then the Secretary shall discharge the borrower's liability on the loan." 20 U.S.C. § 1087(c)(1). The agency holding the loan decides whether to grant a discharge, subject to review by the Secretary. *See* 34 C.F.R. § 682.402(e). A student must submit a written statement affirming that she was admitted to a school on the basis of ability to benefit but did not satisfy the ability to benefit requirements. If the student completed the program, she also must state that she "made a reasonable attempt to obtain employment in the occupation for which the program was intended to provide training, and—(1) Was not able to find employment in that occupation; or (2) Obtained employment in that occupation only after receiving additional training that was not provided by the school that certified the loan." Section 682.402(e)(3)(ii)(C).

Jordan completed a six-month course at the National Business School's Law Enforcement Academy (NBS) in the District of Columbia. When she was admitted to the school in 1987, she did not have a high school diploma or GED, and she did not meet the requirements of § 1091(d). Nevertheless, NBS arranged for Jordan to obtain a guaranteed student loan. Jordan's experience was apparently not unique: an investigation by the Department of Education's Inspector General and the FBI revealed that the school admitted unqualified students by improperly administering entrance examinations, in some cases by giving students the answers.

After her graduation from NBS, Jordan sought employment as a security officer. She answered a newspaper advertisement for security officers, but she was told that she would have to start at what she described as "an unacceptably low salary" because she lacked a high school degree. The record is not entirely clear on whether Jordan was denied a position or was offered a position that she declined. In any event, Jordan submitted a request for a discharge to the holder of her loan, the Nebraska Student Loan Program. That agency denied her request, because she had been offered a job that she declined. The holder also relied upon a policy statement issued by the Deputy Assistant Secretary stating that, absent "unusual circumstances," a guaranty agency could reasonably "consider three separate attempts by the student to find a job" persuasive evidence that the student had complied with 34 C.F.R. § 682.402(e)(3)(ii)(C). The Secretary denied Jordan's appeal on the ground that she had been able to find employment but simply declined the job she was offered.

Jordan then brought this action claiming that the subsequent employment conditions in the regulation exceeded the Secretary's authority under the statute. The district court granted the Secretary's motion for summary judgment. *See Jordan*

gress has since made extensive changes to the     statutory scheme.

*v. Riley,* 26 F.Supp.2d 173 (D.D.C.1998). The court held that the regulation was a permissible interpretation of the ambiguity created by the undefined term "falsely certified." For purposes of summary judgment, it assumed that Jordan had been denied a job, but it held that the regulatory requirement of "a reasonable attempt to obtain employment" could not be satisfied by only one unsuccessful attempt to find employment, because "[a] sample size of one is too small" for a student to demonstrate an inability to get a job. *Id.* at 179. Jordan appealed.

## II.

Jordan contends that the regulation at issue is inconsistent with the statute and therefore fails the first step of the analysis in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The first part of the regulation, it is argued, simply mirrors the statutory requirement that the student has been admitted to a school on the basis of ability to benefit without actually satisfying the ability to benefit test. The second part, however, demands that the student have made an unsuccessful effort to find employment. This condition, appellant argues, is found nowhere in the statute, and for the Secretary to impose it is to violate the congressional command that he "shall discharge the borrower's liability" if statutory criteria are violated. Jordan also argues that, even if the regulation were valid, the district court erred in applying a three-attempt rule, because that rule was found only in a policy statement, and, in any event, the Secretary did not rely on it.

The Secretary justifies the regulation by pointing out that the statute does not define the term "falsely certified." He refers to the dictionary definition of "false" as "contrary to truth or fact" and reasons that "one way to determine whether Ms. Jordan's ability to benefit from security guard training was falsely certified in 1987 is to examine whether she *in fact* had the ability to benefit from that training," as measured by whether she subsequently found a job. On his view, under *Chevron* the regulation is a reasonable interpretation of an ambiguous statute.

Ambiguity, of course, "is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). The Secretary ignores that context, for he overlooks that "ability to benefit" is defined in specific terms in the statute. A school does not certify a student's general "ability" measured at the time of certification—still less as to be determined in the future. Rather, it certifies that the student meets the particular conditions of § 1091(d). Because the school is never asked to certify (predict) that a student *will* find a job, a student's post-training employment experience is irrelevant to the truth or falsity of the certification. The Secretary appears to recognize as much, for another provision of the same regulation already provides a definition of "falsely certified," one that is based solely on whether the student met the objective criteria for certification before being admitted. *See* 34 C.F.R. § 682.402(e)(1)(i).

In other words, the statutory scheme is designed to place obligations on schools, which must certify ability to benefit, and on the government, which must police schools to ensure that their certifications are accurate, or failing that must compensate defrauded students. Under the regulation, a burden is shifted to the student: she is obliged to seek a job before she may claim the benefit of a discharge. Thus, the Secretary has done more than simply add an obligation that is not in the statute; he has changed the nature of the statute.

It would be absurd, the Secretary argues, to allow students to obtain discharges simply because of trivial technical defects in the tests that were used to measure their ability to benefit. So it would. That proposition is not in dispute: Jordan concedes that the Secretary could issue a regulation defining "falsely

certified" in such a way as to exclude certifications that were defective because, for example, the student wrongly took a photocopied version of the test rather than the original. Indeed, the Secretary has already issued an interpretive policy statement to that effect. The legality of a "harmless error" rule cannot justify this regulation, which has a policy objective far exceeding the statutory framework.

Ultimately, the Secretary relies on a policy argument: that students who gain the benefit of the training should not get a windfall by avoiding their loan obligations.[2] He attempts to tie that policy objective to the legislative history. He refers to a committee report indicating that Congress was concerned that students whose eligibility was falsely certified were "left without the skills needed to obtain employment and consequently did not have the means to repay the loans." H.R.REP. No. 447, 102d Cong., 2d Sess. 52 (1992), U.S. Code Cong. & Admin. News at 334, 385. From this he infers that Congress intended to discharge the loans *only* of students who were unable to find employment. We think that is an inference too far. Be that as it may, the Secretary confuses the subjective intentions of the members of Congress with the statute that Congress actually enacted. *Cf. Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ("[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."). The Secretary may not rewrite the statute, even if the enacting Congress might have approved of his efforts.

\*   \*   \*   \*   \*   \*

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

**2.** The Secretary's regulation has its own perverse consequence. Even if a student received zero training—let us say the school was a total sham—the student would be obliged to pay, if by dint of drive and good fortune he or she happened to get a job.