**Theresa GILL, Plaintiff,**

v.

**Roderick PAIGE [1] and United States Department of Education, Defendants.**

**No. 00–CV–5453(CBA).**

United States District Court, E.D. New York.

Aug. 15, 2002.

---

**1.** Pursuant to Fed.R.Civ.P. 26(d), Roderick Paige is substituted in this action for Richard Riley as the Secretary of Education.

Jane Greengold Stevens, Esq., New York Legal Assistance Group, New York, for Theresa Gill, Esperanza Nunez, individually and on behalf of all others similarly situated, plaintiffs.

Stephen J. Riegel, United States Attorney's Office, Civil Division, Charles S. Kleinberg, United States Attorney's Office, Civil Division, Brooklyn, for Richard W. Riley, in his official capacity as Secretary of the United States Department of Education, United States Department of Education, defendants.

## MEMORANDUM AND ORDER

AMON, District Judge.

The plaintiff class[2] has brought this case challenging a policy by the Department of Education that gives weight to the absence of findings by oversight agencies when the Department considers whether to discharge a borrower's student loans under 20 U.S.C. § 1087(c). Plaintiffs argue that this policy is arbitrary, capricious, and contrary to the law, within the meaning of the Administrative Procedures Act ("APA"), 5 U.S.C. § 553. They contend that the policy is in direct conflict with the text of the controlling statute and regulations, procedurally invalid for adoption without a period of notice and comment, and arbitrary and capricious because it is contrary to factual evidence before the Department of Education. The parties have cross-moved for summary judgment. For the reasons set forth below, this Court finds that the policy at issue is, on its face, a reasonable interpretation of the controlling statute and regulations and is procedurally valid. However, this Court further

---

**2.** The parties have stipulated to a class definition: "all persons with federally guaranteed student loans obtained to attend proprietary schools licensed by the New York State Department of Education who requested discharge of their student loans based on alleged false certification of their ability to benefit from their programs of study and who have been or will be denied such discharges by the United States Secretary of Education in reliance upon an absence of findings by oversight agencies about the certification practices of the schools they attended."

Shortly after oral argument was heard in this case, defendants notified the Court that the Department of Education had decided to discharge the loans of the named plaintiff, Theresa Gill, as a result of new information that an oversight agency had made a finding of improper certification practices at Computer Programming Unlimited, the school Ms. Gill attended. Because of the agreement to the certification of a class action, plaintiffs and defendants agree that the Court retains jurisdiction over the pending cross-motions for summary judgment.

concludes that the record before the Court is not sufficiently developed to resolve plaintiffs' claim that the policy is arbitrary and capricious in light of evidence before the Department of Education that licensing and accreditation agencies provide inadequate oversight of proprietary schools. Accordingly, defendants' motion is granted in part and denied in part, and plaintiffs' motion is denied.

## BACKGROUND

Under the Guaranteed Student Loan Program, now known as the Federal Family Education Loan ("FFEL") Program, the federal government provides a public guaranty and insurance system so that students may obtain loans in pursuit of higher education. In order for a student to be eligible for a FFEL loan, she must either have a high school diploma or GED or be certified by the school to have the "ability to benefit" ("ATB") from the education she would receive at the school. At the time that the named plaintiff applied for a loan, 20 U.S.C. § 1091(d) provided three ways that a student could demonstrate eligibility for a loan because of her ability to benefit: (1) by earning a GED before graduation from the program or by the end of the first year of study, (2) by being counseled before admission and completing a prescribed program of remedial education, or (3) by passing a nationally recognized standardized test that measures the student's aptitude. *See Jordan v. Secretary of Education*, 194 F.3d 169, 170 (D.C.Cir.1999).

A student whose ability to benefit was falsely certified by a school may have her liability for her student loans discharged. The Higher Education Amendments of 1992 ("HEA") provide that if a student

borrower's "eligibility to borrow ... was falsely certified by the eligible institution ... then the Secretary shall discharge the borrower's liability on the loan." 20 U.S.C. § 1087(c). The Secretary of Education has promulgated final regulations describing the procedures that students and loan guarantors must use to discharge liability for loans on the basis of false ATB certification. If a student seeks a discharge based on a false certification of ability to benefit, she must submit a sworn factual statement indicating that (1) she was admitted to the school on the basis of her ability to benefit, but that (2) she did not have a high school diploma or GED, (3) she did not pass an approved test, and (4) she did not complete a remedial education program.[3] 34 C.F.R. § 682.402(e)(3), ¶ (e)(3)(ii)(B), ¶ (e)(13).

The regulations also govern how guaranty agencies (or the Department of Education) are to conduct a review. 34 C.F.R. § 682.402(e)(6)(iv)("(e)(6)(iv) regulation") provides that:

> The agency shall review the borrower's request and supporting sworn statement in light of the information available from the records of the agency and from other sources, including other guaranty agencies, state authorities, and cognizant accrediting associations.

In addition to the regulations, the Secretary issues guidance to guaranty agencies regarding the procedures to be used when reviewing discharge applications in what are called "Dear Colleague" letters.[4] The policy challenged in this case, promulgated in a Dear Colleague letter, directs that the absence of any finding by an oversight agency that a school has engaged in improper ability to benefit certification prac-

---

3. These criteria apply to students seeking a discharge for enrollments after July 1, 1987.

4. The Secretary issues general guidance regarding policies and regulations is the form of a letter that begins with the salutation "Dear Colleague."

tices "raises an inference that no improper practices were reported because none were taking place." Dear Colleague Letter Gen–95–42, Def. Ex. B at 4. Accordingly, a borrower's sworn statement that she was falsely certified is not alone "sufficient to establish entitlement to [a discharge] if it is not supported by some other evidence." *Id.* The guaranty agency reviewing the claim is to find any documentation or reports about a school that the borrower claims falsely certified her ability to benefit. "If the guaranty agency concludes that such documentation either does not exist or does not support the borrower's assertion, it becomes the responsibility of the borrower making the claim to produce persuasive evidence that would corroborate his or her allegation of improper [ability to benefit] determination." *Id.* Examples provided in the Dear Colleague letter of other evidence that a borrower might proffer to validate her statement include admissions by school officials that they falsely certified the borrower's ability to benefit and detailed averments by other students at the same school that they were improperly certified.

The reasoning behind the policy, as discussed in the Dear Colleague letter, is that the agencies who are charged with oversight of the schools have the opportunity and responsibility to discover improper certification procedures. The absence of any adverse findings in agency reports about a school raises the inference, according to the Secretary, that no improper practices were taking place. According to the policy, the borrower's statement in pursuit of debt discharge is likely motivated by self-interest and generally is insufficient, standing alone, to establish false certification in the absence of adverse findings.

## DISCUSSION

Plaintiffs bring this suit under the Administrative Procedures Act ("APA"), which requires that they show that the Secretary's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). They challenge the Dear Colleague policy on several grounds. First, they argue that the policy is contrary to law because it conflicts with the applicable statute and regulations. Plaintiffs additionally contend that the policy should be voided for procedural defects because it is a legislative rule that was not promulgated after the notice and comment period required by the APA, 5 U.S.C. § 553. Lastly, they argue that the policy is arbitrary and capricious in light of evidence that the oversight agencies relied upon by the policy to make findings are inadequate to the task.

### I. *Contrary to Law*

Plaintiffs challenge the Dear Colleague policy as contrary to law on three bases. First, they contend that it conflicts with the applicable provisions of the Higher Education Amendments of 1992 ("HEA"). Second, they argue that the policy is in conflict with the text of the (e)(6)(iv) regulation. Third, they argue that the policy is void because it was not enacted after a period of notice and comment required by the APA. The Court finds each of these challenges unpersuasive.

### A. *Conflict with the Higher Education Amendments of 1992*

The plaintiffs argue that the Dear Colleague policy must be invalidated because it is in conflict with the Higher Education Amendments of 1992 ("HEA"). Relying on a D.C. Circuit case, *Jordan v. Secretary of Education,* 194 F.3d 169 (D.C.Cir.1999), which invalidated prior ATB discharge regulations, plaintiffs argue that the Dear Colleague policy is in conflict with the statute because it places a burden on the

borrower not contemplated by the statute. *Jordan* invalidated a regulatory requirement that a borrower look for work in her field of study and fail to secure employment before a loan discharge would be granted. The Secretary argued that this work-search requirement was a reasonable interpretation of the statutory phrase "ability to benefit." The court, however, found that the work requirement conflicted with the statute, which provided as the criteria for "ability to benefit" only three things: that the student possess a high school diploma or GED, have taken remedial education classes, or have passed a standardized basic skills test. The court found that this regulatory requirement was in direct conflict with the statute because it added a burden not present in the statute. 194 F.3d at 171. Accordingly, it invalidated the regulation as contrary to the clear statement of Congress, under the first step of *Chevron, U.S.A., Inc. v. Natural Resources Def. Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See* 194 F.3d at 171–72.

Plaintiffs argue that the Dear Colleague policy, like the regulation voided in *Jordan,* adds a discharge eligibility requirement to the statute and therefore is in conflict with it. The additional requirement, they contend, is a finding by the oversight agency that a school has engaged in improper ATB certification practices. Because the requirement of a prior finding is not present in the statute, plaintiffs argue, the policy is invalid.

Plaintiffs' position is not persuasive.[5] The Dear Colleague policy does not add a substantive burden in the same sense as the *Jordan* regulation. Contrary to the plaintiffs' assertion, the Dear Colleague policy does not require an oversight agency's prior finding of improper practices before a loan discharge will be granted. The policy clearly states that a borrower may obtain a discharge without a finding by an oversight agency if she can present other corroborating evidence to bolster her sworn statement. For example, a borrower may present the sworn statements of other borrowers or an admission by a school official. The Dear Colleague policy merely states how a borrower may demonstrate the statutory requirements; it does not add a requirement to the statutory definition of ability to benefit.

Plaintiffs contend that relying on the absence of findings is not a reasonable construction of the statute in light of the purpose of the Higher Education Amendments of 1992. They rely on findings made in a congressional committee report, Abuses in Federal Student Aid Programs, S.Rep. No. 102–58 (1991), referred to by the parties as the "Nunn Report" (after the committee chairman, Senator Sam Nunn), that proprietary schools would frequently falsely certify students' ability to benefit. The Nunn Report additionally concluded that licensing and accreditation agencies were inadequate to police or investigate proprietary schools' abuses. Plaintiffs argue that Congress added the ability to benefit discharge provision of

---

**5.** As an initial matter, the Court notes that the *Jordan* regulation was reviewed under the level of deference articulated in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Although the Dear Colleague policy, which was not adopted after a period of notice and comment, may not be entitled to a high level of deference, *see United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 150

L.Ed.2d 292 (2001); *Christensen v. Harris County,* 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *Chao v. Russell P. Le Frois Builder, Inc.,* 291 F.3d 219 (2d Cir. 2002), the Court need not decide what deference the policy is owed in this instance because, as discussed, the plaintiffs cannot articulate any persuasive theory as to how the policy actually conflicts with the HEA and is therefore "contrary to law," 5 U.S.C. § 553.

the Higher Education Amendments in response to the Nunn Report, and thus the Dear Colleague policy is contrary to the purpose of the statute. The logical inference embedded in the Dear Colleague policy, that if no improper actions were reported, they were not taking place, plaintiffs argue, is in direct conflict with the findings in the Nunn Report that oversight agencies were inadequate policemen.

■ The Court finds that the decision to require evidence in addition to a sworn statement in certain circumstances is not in conflict with the statute. First, nothing in the language of § 1087(c) itself indicates that this is not a permissible construction; the statute, which provides only that the Secretary "shall discharge" a borrower's loans if her ability to benefit was falsely certified, is silent as to how a borrower's entitlement is to be demonstrated. Second, the legislative history of the statute does not indicate that the clear intent of Congress was to preclude this policy. Neither the Nunn Report nor the legislative history of the HEA provides the Court with a clear direction as to Congress's intent on the issue before the court: how entitlement to a discharge is to be shown. Moreover, the Nunn Report is of questionable value in construing this provision of the statute. The Nunn Report is not part of the legislative history of the HEA. The actual legislative history of the HEA only obliquely refers to the Nunn Report's findings and does not refer to the policing failures of oversight agencies:

> In addition to being more expensive than direct loans, the Committee believes that the current Stafford Student Loan program suffers from a number of problems, as documented in the May 1991 report of the Senate Permanent Subcommittee on Investigations, chaired by Senator Sam Nunn. These problems include: a high rate of student defaults,

financial failure of one major guarantee agency, questions about the strength and number of guarantee agencies, severe problems in managing student loans by lenders, and fraud and abuse by certain lenders and some trade schools.

H.R.Rep. No. 102–447, at 392 (1992). These materials do not provide an indication of clear congressional intent on the issue of whether the Secretary may require information in addition to a sworn statement in any instance when considering a loan discharge.

■ The Court also finds that the Secretary's decision to request information from a borrower in addition to a sworn statement to demonstrate entitlement to a loan discharge is an entirely reasonable way to fill the void left by the statute. Defendants point to several other contexts in which courts have upheld such requirements. *See, e.g., Mejia–Paiz v. INS,* 111 F.3d 720, 722–23 (9th Cir.1997) (finding that where the burden is on an alien to show eligibility for asylum, INS may require corroboration of alien's statements); *Zhang v. Slattery,* 55 F.3d 732, 755–56 (2d Cir.1995) (upholding INS's construction to place burden of proof on an alien where the statue was silent as to burdens of proof); *Griffin v. United States,* 588 F.2d 521, 530 (5th Cir.1979) (holding that a tax payer may not meet a burden of proving that the Commissioner's tax liability estimate is inaccurate with only his own uncorroborated testimony). Because nothing before the Court demonstrates a clear congressional intent to preclude the Dear Colleague policy, and because this policy is rational, the Court finds that the Dear Colleague policy is a permissible construction of the statute. Accordingly, it will not be overturned as contrary to the statute.

B. *Text of the Regulation*

■ When a court reviews an agency's interpretation of its own regulations, that interpretation is "given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (citing *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991)) (internal quotation marks omitted). This Court "must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Id.* (citing *Gardebring v. Jenkins,* 485 U.S. 415, 430, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988) (internal quotation marks omitted)); *see also Brown v. Gardner,* 513 U.S. 115, 122, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (holding that a regulation that "flies against the plain language of the statutory text exempts courts from any obligation to defer to it").

Plaintiffs contend that the Dear Colleague policy is not owed any deference because it conflicts with two parts of the text of the (e)(6)(iv) regulation (the underlined portions of):

> The agency shall review the borrower's request and supporting sworn statement in light of *the information* available from *the records* of the agency and from other sources, including other guaranty agencies, state authorities, and cognizant accrediting associations.

Plaintiffs argue that the decision to look at findings of the supervisory agencies conflicts with the regulation because it does not require a reviewer to look at the actual information available from the agency. Plaintiffs also argue that use of the language "the records" indicates that the agency should look at all of the records, not just the presence or absence of previous findings about ATB certification.

■ In addition, plaintiffs contend that the Dear Colleague policy conflicts with the regulations because it alters the burdens of proof established by them. Plaintiffs argue that 34 C.F.R. § 682.402(e)(3) together with ¶ (e)(6)(iv) allocate the burdens in a request for a false certification discharge. Paragraph (e)(3) states the "borrower qualifications for discharge:" a "borrower must submit to the holder of the loan a written request and a sworn statement" indicating her eligibility for a discharge pursuant to the regulations. Paragraph (e)(6)(iv) states that "upon receipt of a … request submitted by a borrower … [t]he agency shall review the borrower's request and supporting statement in light of information available …." Plaintiffs suggest that these regulations provide that a borrower will have satisfied her burden of production when she submits the sworn statement because upon receipt of that statement, the agency "shall review" the application in light of available information. Because the Dear Colleague policy shifts the burden back to the borrower to produce evidence in an absence of any production, meaning in the absence of any findings, plaintiffs argue that the policy is in conflict with the regulations and thus is contrary to law.

The defendants contend that the Dear Colleague policy is a reasonable interpretation of the regulations. The Dear Colleague policy, defendants argue, merely articulates how a borrower's statement will be viewed "in light of" the "information" available to the guarantor. In addition, the policy states when the Secretary will exercise his regulatory authority to request more information from a borrower. Defendants point to 34 C.F.R. § 682.402(e)(3)(v), which states that a borrower must agree in her sworn statement

to provide more documentation "upon request" of the Secretary or his designee "that demonstrates to the satisfaction of the Secretary or the Secretary's designee[ ] that the student meets the qualifications" of an ATB discharge. The defendants contend that the Dear Colleague policy simply states a regular circumstance in which the Secretary will exercise this authority to request additional information in order to be satisfied as to the borrower's entitlement to a discharge.

This Court is not persuaded by plaintiffs' position that the Dear Colleague policy is in direct conflict with the regulation. Their argument that the Secretary is required to look at all of the information in the files of agencies requires the language of the regulation to be stretched to accommodate it. Plaintiffs' argument requires the word "all" to be inserted into the text. Moreover, it is a perfectly reasonable interpretation of the word "information" to include "findings" or even the absence of findings;[6] the Secretary's decision to give weight to one particular piece of information, the absence of findings, does not conflict with the command to look at information.

Plaintiffs' argument regarding the burdens of proof also fails. Contrary to the plaintiffs' assertion, the requirement to request additional information from the borrower does not conflict with the regulations; it is directly authorized by them. Paragraph (e)(3)(v) clearly indicates that the Secretary may ask for information whenever he wishes so that he may be satisfied as to the borrower's entitlement. The Court concludes that the Dear Colleague policy is a reasonable interpretation of the regulations.

---

**6.** *See* Webster's Third New International Dictionary 1160 (1986) (defining "information" as "knowledge communicated by others or

### C. *Procedural Challenge*

Plaintiffs contend that the Dear Colleague is procedurally void because it was not enacted after a period of notice and comment required by the APA. In general, the APA requires that when an agency promulgates rules and regulations, it may do so only after it gives the public notice of the proposed regulations and an opportunity to comment. 5 U.S.C. § 553. However, the notice and comment requirements do not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice." 5 U.S.C. § 553(b)(A). The Second Circuit has discussed this distinction as one between "legislative rules" and "interpretive rules." Legislative rules requiring notice and comment are those which "create new law, rights, or duties, in what amounts to a legislative act." *Sweet v. Sheahan,* 235 F.3d 80, 91 (2d Cir.2000) (quoting *White v. Shalala,* 7 F.3d 296, 303 (2d Cir.1993)). Legislative rules "impose obligations on members of the public distinct from, and in addition to, those imposed by the statute." *Id.* Legislative rules fix a legal relationship and are binding on either the parties or the courts. *See New York City Employees' Retirement Sys. v. SEC,* 45 F.3d 7, 12–13 (2d Cir.1995) ("NYCERS"). An interpretive rule, however, does not create rights, but merely clarifies an existing statute or regulation. *Sweet,* 235 F.3d at 91.

The Second Circuit has approved a formulation for legislative rules explained in a D.C. Circuit case, *American Mining Congress v. Mine Safety & Health Admin.,* 995 F.2d 1106, 1110–12 (D.C.Cir.1993). 235 F.3d at 91. Whether a rule is legislative turns on:

obtained from investigation, study, or instruction").

(1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule. If the answer to any of these questions is affirmative, we have a legislative, not an interpretive rule.

*American Mining*, 995 F.2d at 1112. In order for an amendment of a regulation to be legislative, and therefore subject to notice and comment, the amendment itself must be binding. *NYCERS*, 45 F.3d at 14.

Plaintiffs argue that Dear Colleague policy is legislative because it amends the prior regulations. They contend that the Dear Colleague presumption amends the burdens of proof established by the regulations. In addition, they argue that the Dear Colleague policy adds to the regulations the requirement that a school have a pre-existing finding against its ATB certification practices before a discharge will be granted.

In essence, these are the same arguments the plaintiffs advanced in favor of their position on the substantive validity of the Dear Colleague policy pursuant to the statute and the regulations. For substantially the same reasons stated above, the Court rejects the plaintiffs' contentions that the Dear Colleague policy is a legislative rule and was required to be promulgated after a period of notice and comment. The Dear Colleague policy does not amend the prior regulations. The requirement to submit additional documentation in certain circumstances is not an addition to the regulations. It is expressly provided by ¶ (e)(3)(v). As already discussed, the policy does not impose a requirement of prior findings of improper practices against a school because it permits a borrower to prevail upon submission of other information. The Court concludes that the Dear Colleague policy is an interpretive rule that clarifies the existing regulations. Accordingly, it is not procedurally void for promulgation without notice and comment.

## II. *Arbitrary and Capricious*

Despite having themselves moved for summary judgment, plaintiffs contend that additional discovery is warranted to develop the record regarding their claim that the adoption of the Dear Colleague policy was arbitrary and capricious in light of evidence before the Department of Education that the agencies relied upon by the Dear Colleague policy to make ATB findings provide inadequate oversight. The Court agrees.

The Court's review of agency action under the arbitrary and capricious standard is limited. The Court must "consider whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *City of New York v. Shalala*, 34 F.3d 1161, 1167 (2d Cir.1994) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). The Court is not permitted, however, to substitute its judgment on the wisdom of a rational policy alternative for that of the agency. *Chevron*, 467 U.S. at 865–66, 104 S.Ct. 2778; *City of New York*, 34 F.3d at 1167. For example, the policy is subject to invalidation under this standard if the agency has (1) relied on factors which Congress has not intended it to consider, (2) entirely failed to consider an important aspect of the problem, (3) offered an explanation for its decision that runs counter to the evidence before the agency, or (4) if the decision is so implausible that it could

not be ascribed to a difference in view or the product of agency expertise. 34 F.3d at 1167.

Plaintiffs ask the Court to take judicial notice of the Nunn Report's conclusions, specifically that licensing and accreditation agencies were inadequate policeman of proprietary schools' ATB certification practices at the time that the plaintiffs in this case applied for their loans and were certified by their schools. For the purposes of this motion, defendants have admitted to the existence of the Nunn Report and the Department of Education's knowledge of it. Plaintiffs contend that these facts entitle them to summary judgment in the absence of "knowledge, independent of the Nunn Report, that contrary to the Nunn Report the oversight agencies had adequately investigated the admission practices of proprietary vocational schools." Pls. Let. to Judge Amon June 5, 2002. Defendants have presented the facts that oversight agencies had made findings of improper ATB certification practices for 16 schools in the New York area and that 43% of the Department of Education's discharges were made pursuant to those findings. Defendants argue that they are entitled to summary judgment on these facts because they demonstrate that oversight agencies can be relied on, at least minimally, to make findings. Because the absence of findings is given only minimal weight in determining whether a borrower is granted a discharge (the borrower may present other evidence in support of her claim to rebut the Dear Colleague presumption), defendants further claim that reliance on the absence of findings cannot be arbitrary and capricious. Plaintiffs counter that at the very least they are entitled "to an opportunity to do discovery and to prove that the oversight agencies were so deficient in their work that to rely on silence from them is the height of irrationality." *Id.* at 2. Plaintiffs contend that the defendants'

statistics cannot be reliable indicators of oversight agencies' performance because they are not accompanied by any information about how many schools are actually reviewed by the agencies and how many out of those reviewed are given negative findings.

■ The Court finds that the current record is insufficient to make a determination on whether there are materially disputed facts that preclude summary judgment on the claim that facts known by the Department of Education about the capabilities of oversight agencies rendered its decision to place any reliance on the lack of findings arbitrary and capricious. The facts before the Court are not sufficiently developed to determine whether the Secretary considered and rejected or "entirely failed to consider" the performance of accrediting agencies at policing proprietary schools, nor whether the decision to adopt the Dear Colleague policy was "counter to the evidence before the agency." The plaintiffs have raised a sufficiently serious question about this issue to entitle them to discovery on this point. Plaintiffs may seek limited discovery of information before the Department of Education regarding the oversight practices of the agencies whose findings it relies upon in making discharge determinations. Accordingly, the Court denies plaintiffs' and defendants' motions on this ground without prejudice to renewal after further development of the record.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted in part and denied in part and plaintiffs' motion for summary judgment is denied. Because of its findings on the merits of the motions, the Court does not reach defendants' argument that the Court

does not have jurisdiction to enter injunctive relief.

SO ORDERED.