# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 15, 2016    Decided July 1, 2016

No. 15-5310

CENTRAL UNITED LIFE INSURANCE CO., ET AL.,
APPELLEES

v.

SYLVIA MATHEWS BURWELL, IN HER OFFICIAL CAPACITY AS
SECRETARY OF U.S. DEPARTMENT OF HEALTH AND HUMAN
SERVICES, ET AL.,
APPELLANTS

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01954)

---

*Daniel Tenny*, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Mark B. Stern*, and *Alisa B. Klein*, Attorneys, *William B. Schultz*, General Counsel, U.S. Department of Health and Human Services, *Janice L. Hoffman*, Associate General Counsel, and *Susan Maxson Lyons*, Deputy Associate General Counsel for Litigation.

*Quin M. Sorenson* argued the cause for appellees. With him on the brief were *James C. Stansel* and *Tobias S. Loss-Eaton*.

*Brad D. Schimel*, Attorney General, Office of the Attorney General for the State of Wisconsin, *Misha Tseytlin*, Solicitor General for the State of Wisconsin, *Daniel P. Lennington*, Deputy Solicitor General for the State of Wisconsin, *E. Scott Pruitt*, Attorney General, Office of the Attorney General for the State of Oklahoma, *Alan Wilson*, Attorney General, Office of the Attorney for the State of South Carolina, *Ken Paxton*, Attorney General, Office of the Attorney General for the State of Texas, *Sean Reyes*, Attorney General, Office of the Attorney General for the State of Utah, *Patrick J. Morrisey*, Attorney General, Office of the Attorney General for the State of West Virginia, *Leslie Rutledge*, Attorney General, Office of the Attorney General for the State of Arkansas, *Samuel S. Olens*, Attorney General, Office of the Attorney General for the State of Georgia, *Jeff Landry*, Attorney General, Office of the Attorney General for the State of Louisiana, *Bill Schuette*, Attorney General, Office of the Attorney General for the State of Michigan, and *Douglas J. Peterson*, Attorney General, Office of the Attorney General for the State of Nebraska, were on the brief for *amici curiae* the States of Wisconsin, et al. in support of plaintiffs-appellees.

Before: BROWN and MILLETT, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion of the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: At issue in this appeal is whether the Department of Health and Human Services ("HHS") colored outside the lines of its authority. The district court held that it did, and we agree.

The Public Health Service Act, 42 U.S.C. § 201 ("PHSA"), establishes coverage requirements for all health

insurance plans except those it deems "excepted benefits." Only those forms of insurance specifically enumerated in the PHSA can qualify as an excepted benefit and, for the benefits at issue here, that status is further conditioned on specific requirements: (1) the insurance plans must be "provided under a separate policy, certificate, or contract of insurance," and (2) they must be "offered as independent, noncoordinated benefits." *See* 42 U.S.C. § 300gg-63(b); *id.* § 300gg-91(c)(3); *see also id.* § 300gg-21(c)(2).

Among the excepted benefits listed in the PHSA is a form of insurance known as "fixed indemnity." *Id.* § 300gg-91(c)(3)(B). As their label suggests, these policies pay out a fixed amount of cash upon the occurrence of a particular medical event. For instance, if a policyholder visits a hospital or purchases prescription drugs, the provider pays out a predetermined amount, which the policyholder is then free to use however she chooses.

In 2010, Congress passed the Patient Protection and Affordable Care Act ("ACA"), which, among other things, updated the PHSA's coverage requirements and mandated that all applicable individuals maintain "minimum essential coverage." 26 U.S.C. § 5000A(a). Despite the ACA's sweeping reforms to the health insurance market, it left intact and incorporated the PHSA's rules regarding excepted benefits. *See id.* § 5000A(f)(3) (stating the term "minimum essential coverage" does not include the excepted benefits described in the PHSA). And in fact, Amici claim that in the wake of the ACA's passage, many individuals found it cost-effective to forego minimum essential coverage (even despite the penalty) in favor of these fixed indemnity policies. Amicus Br. 9.

But HHS foreclosed that option four years later in the regulation under review here. In May 2014, it announced its plan "to amend the criteria for fixed indemnity insurance to be treated as an excepted benefit" in the individual health insurance market. *Patient Protection and Affordable Care Act; Exchange and Insurance Market Standards for 2015 and Beyond*, 79 Fed. Reg. 30240, 30253 (May 27, 2014). On top of the requirements codified in the PHSA, HHS added another. To be an "excepted benefit," the plan may be "provided only to individuals who have . . . minimum essential coverage." *Id.* Now, those who had previously purchased these plans as a substitute for minimum essential coverage would have to find a fixed indemnity plan that satisfies the PHSA's coverage requirements for non-excepted benefits. The very nature of fixed indemnity insurance, however, renders such plans incapable of satisfying those requirements, so this new rule effectively eliminated *stand-alone* fixed indemnity plans altogether. In response, several providers challenged the rule as an impermissible interpretation of the PHSA, and after a hearing, the district court permanently enjoined HHS's enforcement of the rule under *Chevron* Step One. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

The *Chevron* two-step acts as a check on administrative overreach. Agencies may act only when and how Congress lets them. *See La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act . . . unless and until Congress confers power upon it."); *Ry. Labor Execs. Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 670 (D.C. Cir. 1994) (en banc) ("Agencies owe their capacity to act to the delegation of authority, either express or implied, from the legislature."). To vindicate that important principle, *Chevron* requires courts to determine first whether Congress authorized the agency to act. *See Hearth, Patio & Barbecue Ass'n v.*

*U.S. Dep't of Energy*, 706 F.3d 499, 453 (D.C. Cir. 2013) ("[W]e always first examine the statute . . . , employing traditional tools of statutory construction."). Where Congress "has directly spoken" to the parameters of the agency's authority, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. But if Congress grants an agency flexibility to flesh out a particular policy, the regulation will be upheld "as long as the agency stays within that delegation." *Arent v. Shalala*, 70 F.3d 610, 615 (D.C. Cir. 1995).

Here, HHS described its rule as an attempt to "*amend* the criteria for fixed indemnity insurance to be treated as an excepted benefit." 79 Fed. Reg. at 30253 (emphasis added). Most likely, HHS intended only to amend the *regulatory* criteria because of course only Congress can amend its statutes. But it's more accurate—and fatally so—to say HHS's rule proposed to "amend" the PHSA itself. The PHSA lists only certain defined criteria for fixed indemnity plans to have "excepted benefits" status: the plan (1) is provided under a separate policy, contract, etc., and (2) offers independent, noncoordinated benefits. *See* 42 U.S.C. § 300gg-63(b); *id.* § 300gg-91(c)(3)(B); *cf. id.* § 300gg-21(c)(2). So long as these conditions are met, the plan qualifies as an excepted benefit. *See id.* § 300gg-21(c)(2) (exemption applies "if all of the following conditions are met"). Thus, where Congress exempted *all* such conforming plans from the PHSA's coverage requirements, HHS, with its additional criterion, exempts *less than all*. Disagreeing with Congress's expressly codified policy choices isn't a luxury administrative agencies enjoy.

Nothing in the PHSA suggests Congress left any leeway for HHS to tack on additional criteria. *See* 42 U.S.C.

§ 300gg-91(c)(3) (defining "excepted benefits" for fixed indemnity plans). Nor do any subsequent amendments to it. The ACA, in fact, endorses the PHSA's definition—it excludes the "excepted benefits . . . described in" the PHSA from what counts as "minimum essential coverage." 26 U.S.C. § 5000A(f)(3). At no point does the ACA give even the slightest indication the definition of "excepted benefit" was suddenly debatable; rather, the Act doubled down on the PHSA's existing requirements. Ever since it first carefully defined what counts as an "excepted benefit" in 1996, Congress has never changed course or put its original definition in any doubt. Where the text is as clear as it is here, "that is the end of the matter." *Chevron*, 467 U.S. at 842; *see also Ry. Labor*, 29 F.3d at 671 (en banc) (rejecting an argument that Step One is satisfied "any time a statute does not expressly *negate* the existence of a claimed administrative power" as "flatly unfaithful to the principles of administrative law . . . and refuted by precedent").

Nonetheless, HHS justifies its authority to supplement the PHSA with reference to the Act's requirement that the fixed indemnity plans must be "offered as independent, noncoordinated benefits." *See* 42 U.S.C. § 300gg-91(c)(3)(B). In HHS's view, that requirement "presum[es] the existence of other coverage" but is ambiguous as to what kind. *See* 79 Fed. Reg. at 30254; HHS Br. 19–20. Accordingly, HHS stated, "[W]e are clarifying that there must be such other coverage, and that the other coverage in question must be minimum essential coverage." 79 Fed. Reg. at 30254. Put differently, HHS reads this provision as implying there's *something* the benefits must be independent from or not coordinated with, and Congress's silence left room for HHS to read that unspoken "something" as though it meant "minimum essential coverage."

Ambiguity, however, "is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). Seen in its proper context, HHS's rule clearly misreads the PHSA, which only requires that plans are *offered* as independent and noncoordinated benefits. That provision regulates providers, not consumers. *See Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321, 329 (D.D.C. 2015) ("The only reasonable interpretation of that sentence is that the statute looks to the seller's conduct—are they offering the ostensibly excepted benefits in tandem with other benefits?—and not the buyer's. The statute allows for the possibility of a buyer possessing other coverage but does not require it."). Another part of the PHSA addresses "coordination" with language that corroborates this reading. Listing similar conditions for "excepted benefit" status under that part of the PHSA, the provision requires that there be "no coordination between the provision of such benefits and any exclusion of benefits under any group health plan maintained *by the same plan sponsor*." 42 U.S.C. § 300gg–21(c)(2)(B) (emphasis added). HHS's attempt to regulate consumers under a provision directed at providers confirms the agency's rule was an act of amendment, not interpretation. Accordingly, HHS has no colorable claim to *Chevron* deference. *See MCI Telecomm. Corp. v. AT&T Co.*, 512 U.S. 218, 229 (1994) ("[A]n agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear."); *see also Jordan v. Sec'y of Educ.*, 194 F.3d 169, 171–72 (D.C. Cir. 1999) (concluding, under similar circumstances, an agency's decision to "add an obligation that is not in the statute . . . changed the nature of the statute" and that the "Secretary may not rewrite the statute").[1]

---

[1] HHS's rule also requires fixed indemnity application materials to include a notice that prominently states: "This is a supplement to

8

Because HHS lacked authority to demand more of fixed indemnity providers than Congress required, the district court's permanent injunction is hereby

*Affirmed.*

---

health insurance and is not a substitute for major medical coverage. Lack of major medical coverage (or other minimum essential coverage) may result in an additional payment with your taxes." 45 C.F.R. § 148.220(b)(4)(iv).  No one has challenged this part of the rule, and we express no opinion as to its validity.