**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

MARGARET BLIXT,
            *Defendant-Appellant.*

No. 07-30198

D.C. No.
CR-06-00025-
CCL-1

OPINION

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, District Judge, Presiding

Argued and Submitted
May 6, 2008—Seattle, Washington

Filed November 26, 2008

Before: Susan P. Graber and Johnnie B. Rawlinson,
Circuit Judges, and Otis D. Wright II* District Judge.

Opinion by Judge Rawlinson

---

*The Honorable Otis D. Wright II, United States District Judge for the
Central District of California, sitting by designation.

15807

**COUNSEL**

Palmer A. Hoovestal, Hoovestal Law Firm, Helena, Montana, for defendant-appellant Margaret Blixt.

Michael S. Lahr, Assistant United States Attorney, Helena, Montana, for plaintiff-appellee United States of America.

**OPINION**

RAWLINSON, Circuit Judge:

Margaret Blixt (Blixt) appeals from her jury conviction and sentence for mail fraud under 18 U.S.C. § 1341 and aggravated identity theft under 18 U.S.C. § 1028A. The district court denied Blixt's motion to dismiss the aggravated identity theft charge and subsequent motion for acquittal on the same count. The court determined as a matter of law that contrary to Blixt's assertion, a signature is a name for the purpose of defining a "means of identification" as used in § 1028A. The district court also denied Blixt's motion for acquittal on the mail fraud charge, rejecting her interpretation of what is required to prove the materiality element of the offense.

Blixt appeals these rulings, the inclusion and exclusion of various jury instructions, and the court's decision not to

depart downward for diminished mental capacity pursuant to U.S.S.G § 5K2.13. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

# I.

## *BACKGROUND*

Blixt began working for Crawford and Company (Crawford) in 1998 in its Helena, Montana office. Crawford is a large international corporation, providing claim adjusting, vocational rehabilitation, and risk management services to its insurance company clients. At the time of the events leading to Blixt's conviction, Timothy Fitzpatrick (Fitzpatrick) was the branch manager.

When checks arrived from insurance companies, they were forwarded from the Helena office, along with associated invoices and accounting information, to Crawford's headquarters in Atlanta via commercial carrier. From 2003 to 2004, it was primarily Blixt's responsibility to forward the packages.

The Helena branch maintained a checking account at Valley Bank, with Fitzpatrick having signature authority. Beginning in March, 2003, Blixt began to deposit client payments into the Valley Bank account. Blixt wrote approximately 352 checks from this account for her own personal gain, forging Fitzpatrick's signature on each check. The total amount of the checks was in excess of $150,000.00.

In January, 2004, Blixt began sending false accounting information to Crawford's Atlanta office to cover her actions. Crawford accounting personnel relied on the invoice numbers written by Blixt to determine where to allocate the funds. Using this system, Blixt was able to orchestrate allocation of current funds to old accounts from which Blixt had stolen funds.

In August, 2004, Fitzpatrick was alerted by Valley Bank to "some unusual signatures on checks that were coming into the account." Ultimately, Blixt admitted her actions to Fitzpatrick.

In October or November, 2004, Detective Russell Whitcomb (Whitcomb) of the Helena Police Department interviewed Blixt. Blixt admitted that she forged Fitzpatrick's signature, stole the money, and used it for her own benefit.

FBI Special Agent Kevin Damuth (Damuth) also met with Blixt. Blixt told Damuth that she deposited checks received from customers into the Valley Bank account and withdrew the money by writing checks to herself, signing Fitzpatrick's name. She admitted that neither Fitzpatrick nor anybody else from Crawford had given her authorization to sign Fitzpatrick's name.

On October 4, 2006, Blixt was indicted on two counts. Count 1 charged Blixt with a violation of 18 U.S.C. § 1341 (mail fraud). Count 2 charged her with a violation of 18 U.S.C. § 1028A(a)(1) (aggravated identity theft).

Blixt moved to dismiss Count 2, arguing that a signature was not a name, and therefore not a means of identification under 18 U.S.C. § 1028A. The district court denied Blixt's motion, holding that a forged signature was a means of identification as contemplated under that statute.

Prior to trial, the government filed a motion in limine to prevent Blixt from arguing and presenting evidence at trial that a forged signature is not a means of identification. Upon completion of the government's case, the district court denied the motion. The court also denied Blixt's motion for acquittal pursuant to Rule 29 of the Rules of Criminal Procedure, made at the close of the government's case.

During the settling of jury instructions, Blixt's counsel again raised the defense's theory that a forged signature is not

a name. The district court indicated that it would instruct the jury otherwise. When Blixt's counsel stated that he intended to present the theory nevertheless, the court responded that it would listen to the argument and if the court thought the argument was "contrary to the instruction, the jury [would] be instructed further."

During closing argument, Blixt's counsel argued that a forged signature is not a means of identification but rather "a series of swirls and lines. It doesn't say anything. And that's what a forged signature is. It's not the use of a name." Defense counsel also made the following statements:

- For there to be false statements for the purpose of engaging in mail fraud, Blixt's statements "had to have influenced somebody to part with money."

- The judge was appointed by the President and affirmed by the Senate.

- The jury was brought from the community "to form[ ] a buffer, the barrier between the awesome power of the government and the people."

- The community "can solve our own problems. We don't need the federal government to intercede in local matters."

- "This is serious, serious business. This is the United States government. This is the same government that is at war in Iraq."

- These are "state offenses" that "should have been charged at the state level because the government cannot prove these elements . . ."

- This case "should have been in state court."

Following these statements from defense counsel, the district court instructed the jury that "a signature is a name within the meaning of the phrase 'Means of Identification.' " With respect to Blixt's counsel's statements regarding the materiality element of the mail fraud charge, the court also stated that "Mr. Hoovestal has argued that it is necessary here that a person parted with money. Now, this is incorrect under the law . . ."

The district court further instructed the jury that the case was properly in federal court and the jury should disregard the "erroneous statement of the law by defense counsel" that the case should have been in state court. Finally, the judge stated that it is irrelevant that he was appointed by the President and approved by the Senate; this did not make him "from Washington, D.C.", and "[t]his court has nothing to do with what's going on in Iraq."

Defense counsel preserved his objections to the district court's jury instructions. Blixt was convicted of both mail fraud and aggravated identity theft. At sentencing, Blixt sought a downward departure due to diminished mental capacity. The district court ultimately declined to further adjust Blixt's sentence. Blixt was sentenced to a term of forty-eight months in prison.

Blixt filed a timely notice of appeal.

## II.

### *STANDARDS OF REVIEW*

We review *de novo* a district court's denial of a motion to dismiss the indictment for failure to sufficiently state an offense, *United States v. Sutcliffe*, 505 F.3d 944, 961 (9th Cir. 2007), and the district court's interpretation of the relevant criminal statute. *United States v. W.R. Grace*, 504 F.3d 745, 751 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2964 (2008). We

also review *de novo* the denial of a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. *United States v. Johnson*, 444 F.3d 1026, 1029 (9th Cir. 2006). The district court's formulation of jury instructions is reviewed for an abuse of discretion. *See United States v. Tatoyan*, 474 F.3d 1174, 1179 (9th Cir. 2007). "[H]owever, whether the district court's instructions adequately presented the defendant's theory of the case is reviewed de novo." *Id.* (citation, alteration and internal quotation marks omitted). We review the district court's application of the Sentencing Guidelines to the facts for an abuse of discretion. *United States v. Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008). "[T]he scheme of downward and upward 'departures' [is] essentially replaced by the requirement that judges impose a 'reasonable' sentence." *United States v. Mohamed*, 459 F.3d 979, 986 (9th Cir. 2006).

## III.

## *DISCUSSION*

### A.   The Aggravated Identity Theft Count

Blixt contends that the district court "erred as a matter of law when it ruled that a signature is a name for purposes of [the] Aggravated Identity Theft" statute and thus erred in denying both her motion to dismiss Count 2 and her motion for acquittal on Count 2. Blixt asserts that she did not use another's name, she merely forged a signature, and because a forged signature is not separately identified as a "means of identification" under § 1028A, her actions did not violate the statute.

[1] Whether the use of another's signature constitutes a "means of identification" for purposes of the Aggravated Identity Theft statute has not yet been resolved by this or any other circuit. Finding no prior authority on the issue, we hold as a matter of first impression that forging another's signature

constitutes the use of that person's name and thus qualifies as a "means of identification" under 18 U.S.C. § 1028A.

The Aggravated Identity Theft statute provides in part:

> (1) In general.—Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). The felony violations enumerated in subsection (c) include mail, bank, and wire fraud; acquisition of customer information by false pretenses; theft of public money or property; and alien registration, immigration and citizenship violations. *Id.* § 1028A(c). Blixt was charged with using "a means of identification of another person" to commit mail fraud.

In determining whether a signature qualifies as a "means of identification" in this case, we begin by considering the language of the statute. *See United States v. Fuller*, 531 F.3d 1020, 1025 (9th Cir. 2008).

**[2]** The Aggravated Identity Theft statute defines the term "means of identification" in a way that makes reasonably clear that forging another's signature on a check constitutes the use of a means of identification. *See* 18 U.S.C. § 1028(d) (providing that "[i]n this section and section 1028A . . . (7) the term 'means of identification' means *any name* or number that may be used, *alone or in conjunction with any other information*, *to identify a specific individual*, including any — (A) *name*, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number,

employer or taxpayer identification number . . .") (emphasis added).

**[3]** This definition includes the use of a name, alone or in conjunction with *any other* information, as constituting the use of a means of identification so long as the information taken as a whole identifies a specific individual. There is nothing in the language of the statute that suggests the use of another's name in the form of a signature is somehow excluded from the definition of "means of identification."

**[4]** Were we to find that signatures are categorically not names and thus not included within this definition, we would be disregarding the "settled principle of statutory construction that we must give effect, if possible, to every word of the statute." *Bowsher v. Merck & Co., Inc.*, 460 U.S. 824, 833 (1983) (citation omitted). By using the word "any" to qualify the term "name," the statute reflects Congress's intention to construct an expansive definition. *See Ali v. Federal Bureau of Prisons*, 128 S. Ct. 831, 835-36 (2008) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.' ") (citation and alteration omitted). Categorically carving out a signature from this definition, although a signature is commonly understood to be the written form of a person's name[1], would impermissibly narrow the definition of "name" in the statute. Thus, we agree with the district court that a signature is a name for the purpose of applying the Aggravated Identity Theft statute.

**[5]** Blixt urges us to acknowledge that a signature is no more than "a series of lines, curves, and squiggles," and that no one would be able to decipher Fitzpatrick's name from his signature. However, she does not dispute that Fitzpatrick's signature was meant to be a particularized rendering of his

---

[1]Black's Law Dictionary defines the term "signature" to mean "[a] person's name or mark written by that person or at that person's direction." Black's Law Dictionary (8th ed. 2004)."

name. Fitzpatrick's signature, however illegible, was thus nothing more than his name written in a particular way and meant to identify him, specifically. Thus, in forging his signature, Blixt indisputably used another person's means of identification for an unauthorized purpose in violation of the Aggravated Identity Theft statute.

Concluding that a forged signature constitutes a means of identification does not lead to an unreasonable result. Rather, recognizing a signature as a subset of "name" is consistent with the statute's purpose. *See* House Report No. 108-528, 2004 U.S.C.C.A.N. 779, 780 (June 8, 2004) ("The terms 'identity theft' and 'identity fraud' refer to all types of crimes in which someone wrongfully obtains and uses another person's personal data in some way that involves fraud or deception, typically for economic or other gain . . ."). Here, Blixt's forgery of Fitzgerald's signature without authorization and for her personal economic gain falls precisely within this description of "identity theft" or "identity fraud."

Each of the two arguments Blixt offers to support her position is countered by the plain language of the statute or by its legislative history. First, Blixt argues that because "signature" is not specifically included in the list of "means of identification" in § 1028(d)(7), but "name" is included, Congress must have purposely excluded the term "signature." Blixt cites to our decision in *United States v. Fiorillo*, 186 F.3d 1136 (9th Cir. 1999) (per curiam), to support this argument. *See id.* at 1153 (describing the inclusion of "language in one section of a statute" and the omission of that language in another section of the same Act) (citation omitted). This general principle of statutory construction is inapplicable to the Aggravated Identity Theft statute because the statute does not include the word "signature" in one section of the Act and then exclude it in another section. The word "signature" is simply not included in the statute. Blixt's reliance on *Fiorillo* is thus misplaced.

Blixt next argues that the presence of a signature on a check is the event that causes a check to be paid, not the

name; and that this use of a signature is "not the theft of 'personal data' contemplated by Congress when enacting this statute." As a preliminary matter, we note that the process used by banks to direct payment on a check in no way affects the legal question of whether forging another's signature constitutes the use of that person's name. More importantly, as discussed above, the legislative history cited by Blixt more strongly supports a conclusion that Blixt's forgery of Fitzgerald's signature constitutes the use of a "means of identification" because it conforms precisely to the conduct Congress sought to proscribe — wrongfully obtaining and using Fitzpatrick's signature for her own economic gain.

For these reasons, we affirm the district court's conclusion, as a matter of law, that forging another's signature constitutes the use of that person's name for the purpose of applying the Aggravated Identity Theft statute.

## B. The Mail Fraud Count

[6] We have held that "[a] misrepresentation must be material to form the basis of a conviction for mail or securities fraud." *United States v. Tarallo*, 380 F.3d 1174, 1182 (9th Cir. 2004) (citations omitted). "For mail fraud, the test is whether the statement has a natural tendency to influence, or is capable of influencing, the addressee's decision." *Id.* (citation omitted).

Blixt submits that "the government failed to present proof as to the 'materiality' element, i.e., that the mailings influenced anybody at Crawford to part with money." She contends that her mailing of the checks to the Atlanta office "did not influence anybody to part with money because the thefts had already occurred."

Blixt's argument disregards the established definition of materiality. The Supreme Court has confirmed that the gov-

ernment need not prove reliance to establish materiality, stating:

> In one sense, the Government is correct that the fraud statutes did not incorporate *all* the elements of common-law fraud. The common-law requirements of "justifiable reliance" and "damages," for example, plainly have no place in the federal fraud statutes. *See, e.g., United States v. Stewart*, 872 F.2d 957, 960 (C.A.10 1989) ("Under the mail fraud statute, the government does not have to prove actual reliance upon the defendant's misrepresentations"); *United States v. Rowe*, 56 F.2d 747, 749 (C.A.2 1932) (L. Hand, J.) ("Civilly of course the mail fraud statute would fail without proof of damage, but that has no application to criminal liability"), cert. denied, 286 U.S. 554 (1932). By prohibiting the "scheme to defraud," rather than the completed fraud, the elements of reliance and damage would clearly be inconsistent with the statutes Congress enacted . . .

*Neder v. United States*, 527 U.S. 1, 24-25 (1999) (alterations and parallel citations omitted).

Indeed, even earlier, we held that "[a] misrepresentation may be material without inducing any actual reliance. What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose." *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981) (per curiam) (citations omitted).

**[7]** The evidence introduced at trial established that Blixt sent invoices and checks to the Atlanta office with written directions to allocate the incoming checks to old accounts to cover up the amounts she had taken. This was "in furtherance of [a] fraudulent purpose," *id.*, and thereby material. *See Tarallo*, 380 F.3d at 1182-1183 (concluding that the defendant's misrepresentations regarding his location were material

because they were "designed to give a false impression as to the size and nature of his own company as well as the businesses in which victims were being asked to invest"). Accordingly, we affirm Blixt's mail fraud conviction.

## C. Jury Instructions

**[8]** "In general, a party is entitled to an instruction to help it prove its theory of the case, if the instruction is supported by law and has foundation in the evidence." *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir.), (en banc), *as amended*, *cert. denied*, 128 S. Ct. 804 (2007) (citation and internal quotation marks omitted). As discussed above, Blixt's argument that a signature, or more specifically, a forged signature, is not a name for purposes of the Aggravated Identity Theft statute was not grounded in the law, and was not supported by the evidence. Thus, the district court did not abuse its discretion in declining to give an instruction that a signature was not a name, and by giving an instruction that a signature *was* a name for the purpose of proving aggravated identity theft. Similarly, as discussed above, the district court did not err in properly instructing the jury on the actual law regarding materiality after Blixt's counsel misstated what the government was required to prove.

Blixt also contends that the district court improperly "singled out Defense Counsel's argument and invalidated it to the jury" when it advised the jury that it should disregard counsel's statements regarding the judge's appointment by the President and that the government was the same government at war in Iraq. Blixt asserts that counsel did not make these statements to "inflame the Jury," but rather "to highlight the serious nature of the case in Margaret Blixt's life, and that the Jury's duty was to acts [sic] as judges of the facts by engaging in careful and impartial consideration of the evidence without passion, sympathy, or prejudice." Regardless of counsel's motivation for making the statements, the district court, exercising considerable restraint in the face of blatant jury nullifi-

cation arguments, properly instructed the jury to disregard counsel's statements. *See United States v. Sturgis*, 578 F.2d 1296, 1300 (9th Cir. 1978) ("Not only should a judge interfere with an attorney's closing argument when it is 'legally wrong,' but he should also limit, for example, attorneys' remarks outside the record or unduly inflammatory.").

[9] Each of the challenged instructions was intended to correct legally erroneous or inflammatory statements made by defense counsel during closing arguments. Taken as a whole, the jury instructions provided the jury with adequate and accurate guidance to determine whether Blixt had committed mail fraud and/or aggravated identity theft. *See Tatoyan*, 474 F.3d at 1179 ("In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation.") (citation omitted).

## D. Sentencing Calculation

Blixt does not dispute the district court's calculation of the sentencing guideline range. Instead, Blixt challenges the district court's denial of a downward departure under U.S.S.G. § 5K2.13 for diminished mental capacity.[2] We have previ-

---

[2]Section 5K2.13 provides:

A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

However, the court may not depart below the applicable guideline range if . . . (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public . . .

U.S.S.G. § 5K2.13 (2006).

ously held that, "[t]o the extent that a district court has framed its analysis in terms of a downward or upward departure, we will treat such so-called departures as an exercise of post-*Booker* discretion to sentence a defendant outside of the applicable guidelines range." *Mohamed*, 459 F.3d at 987. Thus, "any post-*Booker* decision to sentence outside of the applicable guidelines range is subject to a unitary review for reasonableness, no matter how the district court styles its sentencing decision." *Id.*

**[10]** As required post-*Booker*, the district court considered the appropriate sentence for Blixt utilizing the factors set forth in 18 U.S.C. § 3553. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir.) (en banc), *cert. denied*, sub nom. *Zavala v. United States*, 128 S. Ct. 2491 (2008). The court determined that an offense level of 15 and a guideline range of 18 to 24 months were reasonable. In making that determination, the court reduced the offense level from the recommended offense level of 21 and the sentencing range from the recommended range of 37 to 46 months.**³**

**[11]** Applying the § 3553 factors, the district court noted that Blixt's history and characteristics were akin to those of many other embezzlers. It also agreed that Blixt was a gambling addict with a severe problem. The court called attention to Blixt's pretrial and post-trial conduct, including the fact that she continued to gamble even after being released post-trial on the condition that she not do so. The court thus determined that the sentence reflected a need for Blixt to be held accountable and was also necessary to protect the public.

**[12]** The court also found that the sentencing enhancement embodied in the identity theft statute was appropriate in this

---

**³**Count 2 was not used to calculate the offense level and corresponding guideline range. The Aggravated Identity Theft statute mandates a two-year sentence to run consecutively to any other term of imprisonment. 18 U.S.C. § 1028A(a)(1).

case. Blixt used her supervisor's identity by signing his name on more than 350 checks totaling approximately $153,000, each check constituting a separate crime. The court noted that "there was a multiplicity of violations and a long-term deception." The court also suggested that, although the fear of federal prison had not stopped Blixt from continuing her deception, the court hoped that the sentence would serve as a "wake-up call" to Blixt. Thus, in imposing sentence, the district court weighed Blixt's gambling problem against the need to hold her accountable, to protect the public from future harm, and to deter others from committing similar crimes.

[13] In light of the district court's reasoned consideration of the § 3553(a) factors, the resulting sentence of twenty-four months on Count 1 was reasonable. *See, e.g., United States v. Moreland*, 509 F.3d 1201, 1207, 1222 (9th Cir. 2007), petition for cert. filed, ___ U.S.L.W. ___ (U.S. Mar. 11, 2008) (No. 08-5878) (holding that the district court's decision to sentence the defendant to 216 months' imprisonment when the guideline range was 292 to 365 months was reasonable "in consideration of the § 3553(a) factors, and in particular, [the defendant's] mental state").

As we have previously noted, "[e]ven assuming we were to disagree with the district judge's assessment of [Blixt's] merits and demerits, that we might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *United States v. Ruff*, 535 F.3d 999, 1004 (9th Cir. 2008) (citation, alteration and internal quotation marks omitted). "Following the Supreme Court's clear mandate, we defer to the district court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." *Id.* (citation and internal quotation marks omitted).[4]

---

[4]Under a unitary reasonableness review, we need not address Blixt's argument regarding the evidence the district court considered in connection with the requested downward departure. *See Mohamed*, 459 F.3d at 987.

## IV.

## *CONCLUSION*

Blixt's argument attempting to distinguish a signature from a name for purposes of the Aggravated Identity Theft statute fails and the district court did not err in denying the motion to dismiss, the motion for acquittal and proposed jury instructions relating to the aggravated identity theft count. Blixt's materiality argument is unavailing, and the district court properly instructed the jury when it corrected defense counsel's erroneous closing argument regarding this element. The district court also acted within its discretion when it gave curative instructions in light of the jury nullification arguments made during closing argument. The district court properly considered Blixt's non-conviction conduct in determining her sentence, and the sentence imposed was reasonable. Accordingly, we affirm the conviction and sentence.

**AFFIRMED.**