**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> ROBERT KENT ALEXANDER, *Defendant-Appellant*. | No. 12-30156 <br><br> DC No. 3:11-cr-05352 RBL-1 <br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
April 9, 2013—Seattle, Washington

Filed August 6, 2013

Before: Dorothy W. Nelson, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Criminal Law

Affirming a conviction for aggravated identity theft, the panel held that a victim's true name and banking numbers appearing on a counterfeit check are a "means of identification" for purposes of 18 U.S.C. §§ 1028A, 1028(d)(7).

### COUNSEL

Alan Zarky (argued) and Colin Fieman, Assistant Federal Public Defenders, Tacoma, Washington, for Defendant-Appellant.

Michael S. Morgan (argued), Assistant United States Attorney; Jenny A. Durkan, United States Attorney for the Western District of Washington, Seattle, Washington, for Plaintiff-Appellee.

### OPINION

TASHIMA, Circuit Judge:

We must decide whether a counterfeit paper check that bears a victim's true name, bank account number, and routing

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

number is a "means of identification of another person" for the purposes of the aggravated identity theft statute, 18 U.S.C. §§ 1028A, 1028(d)(7)). The district court answered in the affirmative and returned a judgment of conviction. We have jurisdiction under 28 U.S.C. § 1291 and, for the following reasons, we affirm.

## I.

While employed as a newspaper deliveryman, Robert Kent Alexander stole mail belonging to two individuals who resided along his delivery route, M.S. and V.S. ("the Snows"). The stolen mail contained a check imprinted with the Snows' names, address, bank account number, and bank routing number. Alexander used the stolen check to create a second, counterfeit check bearing the false name "Robert C. Snow" (listed as a joint account holder along with the Snows), a false Washington State ID number for Robert Snow, and the Snows' true bank account and routing numbers.

Alexander then used the counterfeit check and a fake ID card in the name "Robert Charles Snow," a card that bore Alexander's picture, to make a $158.06 purchase at Walmart. Alexander was on supervised release at the time and, several days prior to the Walmart transaction, a warrant had been issued for his arrest alleging various supervised release violations. During a subsequent search of Alexander's residence, probation officials discovered the counterfeit check. The Snows later reported the Walmart transaction as an unauthorized debit.

Alexander was charged with aggravated identity theft in violation of 18 U.S.C. § 1028A (count 1), bank fraud in

violation of 18 U.S.C. § 1344 (count 2), passing a forged or altered check in violation of 18 U.S.C. § 513(a) (count 3), and possessing stolen mail in violation of 18 U.S.C. § 1708 (count 4). He pleaded guilty to counts 2, 3, and 4. A bench trial was held on count 1, which charged that Alexander "knowingly used, without lawful authority, a means of identification of another person, to wit, the name and Peninsula Credit Union account number of M.S. and V.S., during and in relation to a felony listed in . . . Section 1028A(c), to wit, bank fraud, in violation of . . . Section 1344." Alexander stipulated to the relevant facts but moved for a judgment of acquittal on the grounds that his conduct did not amount to a violation of § 1028A. He argued that, as a matter of statutory interpretation, the passing of a stolen check cannot form the basis of an aggravated identity theft conviction. He noted that § 1028A(a)(1) requires the unlawful use of "a means of identification of another person," a term statutorily defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . access device []as defined in [18 U.S.C.] section 1029(e)." 18 U.S.C. § 1028(d)(7). But because the term "access device" is defined elsewhere in Title 18 as excluding paper checks, *see id.* § 1029(e)(1), Alexander argued that the names and numbers on his counterfeit check were, as a matter of law, not a "means of identification."

The district court rejected Alexander's proposed reading of the statute and, following a one-day bench trial, Alexander was convicted of aggravated identity theft. The court sentenced Alexander to a total of seventy-two months' imprisonment followed by five years of supervised release and $158.06 of restitution.

## II.

We review *de novo* the district court's interpretation of a criminal statute. *See United States v. Keyser*, 704 F.3d 631, 640–41 (9th Cir. 2012). Our analysis begins with the plain language of the statute. *United States v. Williams*, 659 F.3d 1223, 1225 (9th Cir. 2011). "If the plain meaning of the statute is unambiguous, that meaning is controlling and we need not examine legislative history as an aide to interpretation unless the legislative history clearly indicates that Congress meant something other than what it said." *Id.* (internal quotation marks and citation omitted).

The plain language of the aggravated identity theft statute answers the question before us: a victim's true name and banking numbers, appearing on a counterfeit check, are "any name or number that may be used . . . to identify a specific individual." 18 U.S.C. § 1028(d)(7). Accordingly, we agree with the district court that the Snows' personal information appearing on Alexander's counterfeit check was a "means of identification."

### A.

Aggravated identity theft involves the knowing transfer, possession, or use of "a means of identification of another person." *Id.* § 1028A(a)(1). The statute defines a "means of identification" as

> any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any–

(A)  name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

(B)  unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

(C)  unique electronic identification number, address, or routing code; or

(D)  telecommunication identifying information or access device (as defined in section 1029(e))[.]

*Id.* § 1028(d)(7).  Subsection (D) of the aggravated identity theft statute cross-references the access-device fraud statute, which defines "access device" as

any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (*other than a transfer originated solely by paper instrument*)[.]

*Id.* § 1029(e)(1) (emphasis added). Alexander argues that his counterfeit check effected a "transfer originated solely by paper instrument" under the parenthetical language of § 1029(e)(1); we assume, without deciding, that he is correct.[1] According to Alexander, by incorporating the access-device definition from § 1029(e)(1) into § 1028(d)(7)(D), Congress excluded check forgery from the crime of aggravated identity theft. We decline to adopt Alexander's grossly atextual reading of the statute.

It is plain from the language of § 1028(d)(7) that although every access device is a means of identification, not all means of identification are access devices. The term "access device" appears in § 1028(d)(7)(D), one of four subsections that illustrate the sorts of "name[s] or number[s]" that meet the definition of a "means of identification." Subsections (A) through (D) are connected by the disjunctive "or," indicating that no single subsection is necessary to the definition.[2] Moreover, subsections (A) through (D) are preceded by the word "including," which suggests that the list is illustrative rather than exhaustive. *See United States v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005). Thus, whether Alexander's

---

[1] Accordingly, we do not reach the Government's alternative argument that the transaction was actually an electronic funds transfer.

[2] *See United States v. Romero-Martinez*, 443 F.3d 1185, 1189 (9th Cir. 2006); *see also United States v. Lewis*, 443 F. App'x 493, 495–96 (11th Cir. 2011) (per curiam) ("[A]n 'access device' is only one of several items that Congress listed, in the disjunctive, as a 'means of identification.' Thus, simply failing to satisfy the definition of 'access device' does not end the analysis with respect to whether a signature on a stolen check is a 'means of identification.'" (citation omitted)), *cert. denied*, 132 S. Ct. 2742 (2012).

counterfeit check was an "access device" does not answer the question whether the names and banking numbers on his counterfeit check were a "means of identification." For that answer, we must look to § 1028(d)(7)'s introductory paragraph, as well as the examples provided in subsections (A) through (C).

Alexander does not dispute that his counterfeit check contained the Snows' names, bank account number, and routing number. "[A]ny name or number that may be used, alone or in conjunction with any other information, to identify a specific individual" is a "means of identification" under § 1028(d)(7). Subsection (A) reiterates that any "name" meets the definition. 18 U.S.C. § 1028(d)(7)(A). Moreover, a "routing code" expressly meets the definition of a "means of identification" under § 1028(d)(7)(C). The names and banking numbers on Alexander's counterfeit check are therefore a "means of identification" under the plain statutory text.

## B.

Perhaps recognizing that his proposed reading of the statute runs headlong into some very obvious textual problems, Alexander argues that treating a victim's name and banking numbers on a counterfeit check as a "means of identification" would render § 1029(e)(1) – the provision that excludes paper-instrument transfers from the definition of an access device – a nullity. He asks us to "give effect" to § 1029(e)(1)'s paper-instrument exclusion by holding that the names and numbers on his counterfeit check were not a "means of identification." The argument suffers a number of flaws.

As an initial matter, Alexander's nullity argument rests on a logical fallacy. A transfer originated solely by paper instrument is not an access device at all; as such, § 1028(d)(7)(D) has no application.[3] Stated differently, the only "effect" of the paper-instrument exclusion is in defining the contours of the term "access device." *See id.* § 1029(e)(1). Assuming, for the sake of argument, that Alexander's counterfeit check was not an "access device" because it effected a "transfer originated solely by paper instrument," the access-device definition – and its paper-instrument exclusion – simply play no further role in the analysis. *Id.* We fail to see how a subsection that has no application to begin with can be rendered a nullity.

In any event, our interpretation of § 1028(d)(7) does not render § 1029(e)(1)'s paper-instrument exclusion a nullity. That exclusion continues to limit the scope of conduct prohibited by the access-device fraud statute. *See id.* § 1029(e)(1). And the definition of an "access device" continues to have practical significance in other contexts. *See, e.g.*, U.S.S.G. § 2B1.1(b)(11) (2012) (imposing a two-level sentencing increase for select offenses involving "the production or trafficking of any . . . unauthorized access device or counterfeit access device"); *Id.* cmt. 9(A) (defining "counterfeit access device" and "unauthorized access device" by the meanings given in § 1029(e)). Alexander offers no persuasive argument to the contrary.

---

[3] The only other example in subsection (D) – "telecommunication identifying information" – is not at issue in this case. 18 U.S.C. § 1028(d)(7)(D).

## C.

Finally, Alexander argues that treating the victims' names and banking numbers on a counterfeit check as a "means of identification" will upset the state-federal balance in the prosecution of theft offenses by federalizing check forgery. Again, Alexander's argument is foreclosed by the plain statutory language. To the extent that a forged check contains a victim's true name, bank account number, and routing number – personal data that easily "may be used . . . to identify a specific individual" – such a check plainly and comfortably fits within the broad language of § 1028(d)(7) ("any name or number") as well as the specific language of subsections (A) ("name") and (C) ("routing code").

We have previously observed that, "[b]y using the word 'any' to qualify the term 'name,' the [aggravated identity theft] statute reflects Congress's intention to construct an expansive definition." *United States v. Blixt*, 548 F.3d 882, 887 (9th Cir. 2008). In *Blixt*, we held that "forging another's signature constitutes the use of that person's name and thus qualifies as a 'means of identification' under 18 U.S.C. § 1028A." *Id.* at 886. We explained that "[c]ategorically carving out a signature from th[e] definition [of a means of identification] . . . would impermissibly narrow the definition of 'name' in the statute." *Id.* at 887. Alexander's proposed construction of the statute poses a similar problem. Categorically carving out paper-instrument transfers from the definition of a means of identification would impermissibly narrow the broad introductory language of § 1028(d)(7), which defines "means of identification" in terms of the nature of the personal data – "any name or number" – rather than the medium on which it is conveyed (e.g., paper instruments).

Congress knows how to exclude paper-instrument transfers from the ambit of a criminal statute. They did so in 1984, when they defined the term "access device" as part of the Credit Card Fraud Act. *See* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1976, 2183–84 (codified at 18 U.S.C. § 1029). But in 1998, when it defined the term "means of identification" as part of the Identity Theft and Assumption Deterrence Act, it painted with a broader brush. *See* Pub. L. No. 105-318, 112 Stat. 3007, 3008–09 (1998) (codified at 18 U.S.C. § 1028(d)). We presume that such drafting decisions are deliberate. *See United States v. Johnson*, 680 F.3d 1140, 1144 (9th Cir. 2012) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Kucana v. Holder*, 558 U.S. 233 (2010) (internal quotation marks omitted)).

The judgment of conviction is **AFFIRMED.**