**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellant*,

　　　　　v.

CARLOS JAVIER EZETA,
　　　　　　*Defendant-Appellee*.

No. 12-10304

D.C. No.
2:11-cr-00289-
RCJ-VCF-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted
February 10, 2014—San Francisco, California

Filed May 23, 2014

Before: Richard C. Tallman and Johnnie B. Rawlinson,
Circuit Judges, and Thomas O. Rice, District Judge.[*]

Opinion by Judge Tallman

---

[*] The Honorable Thomas O. Rice, United States District Judge for the Eastern District of Washington, sitting by designation.

## SUMMARY[**]

### Criminal Law

Reversing the district court's dismissal of an indictment charging financial aid fraud in violation of 20 U.S.C. § 1097(a), the panel held that § 1097(a) does not require the government to prove that the defendant personally received or exercised dominion or control over the federally insured funds.

The panel held that the statute encompasses the act of taking money from the government via false statements and causing it to be disbursed to others.

### COUNSEL

Camille W. Damm (argued), Assistant United States Attorney; Daniel G. Bogden United States Attorney; and Robert L. Ellman, Appellate Chief, United States Attorney's Office, Las Vegas, Nevada, for Plaintiff-Appellant.

Brenda R. Weksler (argued), Assistant Federal Public Defender; and Rene L. Valladares, Federal Public Defender, Las Vegas, Nevada, for Defendant-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

TALLMAN, Circuit Judge:

Defendant Carlos Javier Ezeta was indicted on four counts of financial aid fraud in violation of 20 U.S.C. § 1097(a). Subsequently, the district court dismissed the indictment after concluding (1) that Ezeta's alleged actions did not satisfy the statute and (2) that Ezeta could not have "willfully cause[d]" or aided and abetted another to commit the crimes. The government appeals the dismissal and we must now decide as a matter of first impression whether § 1097(a) requires a defendant to personally receive or exercise control over federally insured funds obtained by fraud. We have jurisdiction under 28 U.S.C. § 1291, and we now hold that it does not.

I

The allegations are undisputed. Between 2008 and 2011, Ezeta worked as a counselor and professor at the College of Southern Nevada ("CSN"), a community college in Las Vegas. He was the only tenured professor at CSN fluent in both English and Spanish. Both in conjunction with his employment and out of a desire to help the Hispanic community, Ezeta often assisted current and prospective Spanish-speaking students with CSN applications and with selecting courses. But his efforts to "assist" did not end with good advice. Instead, beyond performing his official duties, Ezeta "helped" these students obtain federal financial aid by falsifying and electronically submitting several Free Applications for Federal Student Aid ("FAFSA forms"). In reliance on the representations made in these forms, student aid money was disbursed. These applications eventually

drew the attention of the Department of Education, Office of Inspector General, which commenced an investigation.

The investigation revealed that eight CSN students had visited Ezeta for help with registration and class counseling. When Ezeta learned that the students intended to seek financial aid and had not successfully completed high school, a GED, or an ability-to-benefit test (at least one of which is required to receive funds under Department of Education regulations), he used their personal identification numbers to complete the FAFSA forms for them. In doing so, he falsely represented that the students satisfied the education requirements. Ezeta even told one student to obtain a fraudulent GED certificate.

Many of the students were unaware that their applications contained false statements and none of the students asked or paid Ezeta for his help in filling out the FAFSA forms. Of the eight students involved, six received disbursement of funds from the federal government; the seventh student's application was intercepted prior to disbursement; and the eighth student's application was never submitted because she had not yet obtained a phony certificate of high school completion. The six students who received funds were given $8,709 in federal loans, but the total amount of intended loss sought through the doctored FAFSA forms was $37,341.

Department of Education investigators then performed a sting operation, sending a Spanish-speaking undercover agent posing as a student to Ezeta's office for help with the enrollment process. The agent told Ezeta that she had not finished high school but nonetheless intended to seek financial aid. Ezeta then completed the FAFSA forms for her and falsely reported that she had completed high school.

Ezeta was thereafter questioned by federal agents. During that conversation, Ezeta admitted to submitting applications for students "a couple of times" and, when confronted with a tape recording of the meeting with the undercover agent and proof that his IP address was linked to the falsified FAFSA applications, he then admitted that he had indeed submitted the falsified forms because he wanted to "help people." There is no evidence that Ezeta personally received any financial benefit for committing the fraud, though the school presumably received funds improperly obtained through his fraudulent activities.

The grand jury indicted Ezeta on four counts of financial aid fraud in violation of 20 U.S.C. § 1097(a). Over the government's opposition, Ezeta moved to dismiss the indictment, arguing that the statute requires personal receipt, control, or possession of federally insured funds and that the government failed to allege that Ezeta ever touched, let alone controlled, the student loan money. Despite the district court's verbal indication at argument on the motion that it would rule in the government's favor, in issuing its written decision the court granted Ezeta's motion to dismiss the indictment in its entirety. The government now appeals.

II

We review de novo a district court's dismissal of an indictment based on its interpretation of a federal statute. *United States v. Gomez-Rodriguez*, 96 F.3d 1262, 1264 (9th Cir. 1996) (en banc). Dismissal of an indictment is appropriate when it fails to recite an essential element of the charged offense. *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005) (per curiam). This appeal turns on whether 20 U.S.C. § 1097(a) requires, as an element of the offense,

the government to allege and later prove that the defendant personally received or exercised dominion or control over the federally insured funds.

## III

In interpreting a criminal statute, we begin with the plain statutory language. *United States v. Alexander*, 725 F.3d 1117, 1118–19 (9th Cir. 2013). "If the plain meaning of the statute is unambiguous, that meaning is controlling and we need not examine legislative history as an aid[] to interpretation unless the legislative history clearly indicates that Congress meant something other than what it said." *Id.* at 1118–19 (quoting *United States v. Williams*, 659 F.3d 1223, 1225 (9th Cir. 2011)).

Section 1097(a) reads:

> Any person who *knowingly and willfully* embezzles, misapplies, steals, *obtains by fraud, false statement, or forgery,* or fails to refund any funds, assets, or property provided or insured under this subchapter and part C of subchapter I of chapter 34 of Title 42 or attempts to so embezzle, misapply, steal, obtain by fraud, false statement or forgery, or fail to refund any funds, assets, or property, shall be fined not more than $20,000 or imprisoned for not more than 5 years, or both, except if the amount so embezzled, misapplied, stolen, obtained by fraud, false statement, or forgery, or failed to be refunded does not exceed $200, then the fine shall not

be more than $5,000 and imprisonment shall
not exceed one year, or both.

20 U.S.C. § 1097(a) (emphasis added). It is undisputed that
the government sought to charge Ezeta for "knowingly and
willfully . . . obtain[ing] by fraud [or] false statement" the
student loan funds. 20 U.S.C. § 1097(a). Thus, we must
determine whether the word "obtain" requires a defendant to
exercise personal control over the funds or whether causing
the funds to be disbursed to another recipient is sufficient.
We conclude that criminal liability under § 1097(a) extends
to knowingly and willfully causing the funds to be disbursed
to a third party by fraud, false statement, or forgery.

The Supreme Court has held that when "a word is not
defined by statute, we normally construe it in accord with its
ordinary or natural meaning." *Smith v. United States*,
508 U.S. 223, 228 (1993). To determine a word's plain and
ordinary meaning, we may refer to standard English language
dictionaries. *See id.* at 228–29; *United States v. Carona*,
660 F.3d 360, 367 (9th Cir. 2011).

The word "obtain" is defined as "[t]o come into the
possession or enjoyment of (something) by one's own effort,
or by request; *to procure or gain, as the result of purpose and
effort; hence, generally to acquire, get*" and "[t]o procure
something to be done[;] [t]o induce, prevail upon (a person)
to do something." Oxford English Dictionary Vol. X, p.
669–70 (2d ed. 1989) (emphasis added). This definition
supports the conclusion that "obtain" is a verb of acquisition
and not one of dominion; it is entirely possible for someone
to "procure," "acquire," or "get" something of value for a
third party. *See United States v. McFall*, 558 F.3d 951, 956
(9th Cir. 2009) (interpreting "obtain" in a different context to

require "someone—either the extortioner or a third person" to receive property and noting that the extortioner does not need to directly or indirectly benefit (quoting *United States v. Panaro*, 266 F.3d 939, 943 (9th Cir. 2001))). Moreover, this reading is consistent with the rest of the statute, which also criminalizes attempt. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) (noting that ambiguity "is a creature not of definitional possibilities but of statutory context").

Under Ezeta's reading of the statute, the government would be required to prove that Ezeta exercised dominion and control over the unlawfully obtained funds. But we hold that this interpretation unduly restricts the ordinary and natural meaning of the term "obtain" and conflicts with prior decisions that have declined to read elements into § 1097(a). *See Bates v. United States*, 522 U.S. 23, 28–31 (1997) (concluding that specific intent to injure or defraud was not required under the statute's "willful misapplication" language); *see also United States v. Ranum*, 96 F.3d 1020, 1025–27 (7th Cir. 1996) (holding that intent to deceive is not an element of financial aid fraud).

Regardless, even if we were to conclude that the meaning of "obtain" is ambiguous, the legislative history suggests that Congress intended the statute to cover Ezeta's alleged crimes. The purpose of the financial aid fraud statute is to "provide broad protection for Title IV student financial aid funds entrusted to private educational institutions." *United States v. Bates*, 96 F.3d 964, 969 (7th Cir. 1996), *affirmed by Bates*, 522 U.S. at 29–32 & n.8. Due to the plain meaning of "obtain" coupled with Congress's intent that the statute have broad reach, we hold that the statute encompasses the act of taking money from the government via false statements and causing it to be disbursed to others.

Finally, other appellate cases that Ezeta cites in support of his position are consistent with our conclusion that the word "obtain" requires the disbursement of or the attempt to cause the disbursement of funds to *someone* (not necessarily to the defendant). *See, e.g.*, *United States v. Redfearn*, 906 F.2d 352, 353–54 (8th Cir. 1990); *see also United States v. Morris*, 723 F.3d 934, 939 (8th Cir. 2013) (holding that there was sufficient evidence to convict parents who obtained Pell Grants by fraud and false statement on behalf of their daughters).

Although it is undisputed that Ezeta did not receive any payment for his alleged "services," it cannot be said that he did not benefit from them. After all, the tuition money allegedly diverted from the federal treasury was presumably spent at the school where Ezeta was employed. And the record indicates that Ezeta, who received many awards and accolades for his involvement with the local Hispanic community, had a reputational interest furthered by the alleged criminal acts. Regardless of Ezeta's desire to "help people,"[1] if the government proves the allegations in the indictment beyond a reasonable doubt, Ezeta committed a crime. A criminal act done with a good heart is still a

---

[1] Ironically, the very students Ezeta claimed to help were at great risk of being harmed by his alleged actions. The fact that schools occasionally abuse the federal loan system by preying on vulnerable students who must later repay the value of an education for which they may not be suited is well documented. *See Jordan v. Sec'y of Educ.*, 194 F.3d 169, 169–70 (D.C. Cir. 1999) (noting that schools were falsely certifying student ability to benefit in order to obtain loan funds and discussing new regulations that provide an avenue for such students to have their debt discharged).

criminal act.**²** *See, e.g.*, *United States v. Frost*, 281 F.3d 654, 656 (7th Cir. 2002) (noting in a similar case that conduct defendants believed to be justified was "fraud nonetheless: lies that induce [the government] to part with [] money are material").

Because we hold that exercising personal dominion or control over the federally insured funds is not an element of financial aid fraud under the "knowingly and willfully . . . obtain[ing] by fraud [or] false statement" language of the statute, we conclude that the district court erred in dismissing the indictment.**³**

**REVERSED AND REMANDED.**

---

**²** Justice Oliver Wendell Holmes, Jr., is rumored to have told a young Judge Learned Hand that the job of a judge is not to do justice, but to apply the law. *See* Michael Herz, *"Do Justice!": Variations of a Thrice-Told Tale*, 82 Va. L. Rev. 111 (1996). Accordingly, we apply the law.

**³** Even if 20 U.S.C. § 1097(a) did require a defendant to exercise personal dominion or control over the funds, Ezeta would still face criminal liability. Contrary to Ezeta's position, we have previously concluded that the existence of a knowing principal is "immaterial" to liability under 18 U.S.C. § 2(b) and that "the government need not prove that someone other than the defendant was guilty of the substantive crime." *United States v. Causey*, 835 F.2d 1289, 1291–92 (9th Cir. 1987) (upholding a tax protester's conviction for "aiding, abetting, and causing individuals to file false tax returns" even though the government failed to allege and prove that the persons actually submitting the false returns knew they were false, and therefore failed to prove the existence of knowing principals). Because it is sufficient that the defendant "assists in the illegal enterprise" even if he does not personally commit all required elements and instead "causes the commission of an indispensable element of the offense [by] an *innocent* agent," *id.* at 1292, Ezeta would be liable under § 2(b) and punishable as a principal.