**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

HENRIK SARDARIANI,
*Defendant-Appellant*.

No. 12-50418

D.C. No.
2:10-cr-01343-VAP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
January 7, 2014—Pasadena, California

Filed June 19, 2014

Before: Stephen Reinhardt and Richard R. Clifton, Circuit
Judges, and Jennifer A. Dorsey, District Judge.[*]

Opinion by Judge Clifton

---

[*] The Honorable Jennifer A. Dorsey, District Judge for the District of
Nevada, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming a sentence for conspiring to commit wire fraud and other offenses, the panel held that a notary seal can be an "authentication feature" under 18 U.S.C. § 1028, and that the district court correctly applied an enhancement for use of an authentication feature under U.S.S.G. § 2B1.1(b)(11)(A)(ii).

### COUNSEL

Jerald Brainin, Law Offices of Jerald Brainin, Los Angeles, California, for Defendant-Appellant.

Ranee A. Katzenstein, Assistant United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

### OPINION

CLIFTON, Circuit Judge:

Defendant Henrik Sardariani appeals his sentence of 120 months imposed as a result of a guilty plea conviction for conspiring to commit wire fraud and other offenses. We affirm. In doing so, we hold that a notary seal can be an "authentication feature" under 18 U.S.C. § 1028, and that the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

district court, in calculating the advisory guidelines range in this case, correctly applied an enhancement for use of an authentication feature under Sentencing Guidelines § 2B1.1(b)(11)(A)(ii) (formerly § 2B1.1(b)(10)(B)(ii)).[1]

## I.  Background

Beginning in 2007, Sardariani, along with several co-conspirators, developed and executed a scheme to procure multiple loans from various private lenders by falsely pledging as collateral properties he did not own.  The properties included: (1) a house in Burbank, California, previously owned by Sardariani but subsequently sold in a foreclosure sale; (2) a house in Glendale, California, previously owned by Sardariani but subsequently transferred to a sham entity under his control; and (3) a house in Sherman Oaks, California, which Sardariani induced another to purchase and then fraudulently transferred to the sham entity. Sardariani and his co-conspirators worked to conceal the truth and lull the victims into a false sense that their money was safe before absconding with the loan proceeds.  The total amount stolen in this way was $5,450,000.  Sardariani eventually pled guilty to charges of conspiring to commit wire fraud, aggravated identity theft, and transactional money laundering (18 U.S.C. § 371); wire fraud (18 U.S.C. § 1343); and engaging in unlawful monetary transactions (18 U.S.C. § 1957).

Among the many falsified documents relating to the fraudulent scheme were a grant deed purportedly transferring the Sherman Oaks property from another person to

---

[1] Sardariani presents other challenges to his sentence that are resolved in a memorandum disposition filed together with this opinion.

Sardariani's company, SLK, and a reconveyance of an outstanding deed of trust securing a prior lender's loan on the Burbank property. These two documents were recorded bearing both forged signatures and forged notary seals. At sentencing, the district court found that Sardariani "used the notary seals and the notary commission numbers that he cut and pasted" to further the commission of the crime. In calculating the appropriate range under the advisory Sentencing Guidelines, the court imposed an enhancement for use of an authentication feature under U.S.S.G. § 2B1.1(b)(11)(A)(ii). Sardariani appeals the application of this enhancement.

## II. Discussion

A district court's interpretation of the Sentencing Guidelines is reviewed *de novo*. *United States v. Rivera*, 527 F.3d 891, 908 (9th Cir. 2008).[2]

The Sentencing Guidelines provide for a 2-level increase "if the offense involved . . . the possession or use of any . . . authentication feature." § 2B1.1(b)(11)(A)(ii).[3] To define

---

[2] The Government argues that the plain error standard should apply because Sardariani did not present his objection to the district court. We need not resolve that argument because the outcome of our analysis does not depend on the standard of review.

[3] The full text reads:

> "If the offense involved (A) the possession or use of any (i) device-making equipment, or (ii) authentication feature; (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature; or (C)(i) the unauthorized transfer or use of any means of

terms used in this subsection, the Guidelines refer to the Secure Authentication Feature and Enhanced Identification Defense Act of 2003 ("SAFE ID Act"), codified at 18 U.S.C. § 1028. *See* U.S.S.G. § 2B1.1 cmts. 1, 10. "Authentication feature" is defined as a "symbol . . . or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified." 18 U.S.C. § 1028(d)(1).[4]

Sardariani argues that the court's application of an enhancement for use of an authentication feature under § 2B1.1(b)(11)(A)(ii) was erroneous because the definition of "authentication feature" is limited to symbols used on identification documents issued by a governmental authority. Specifically, he argues that his actions did not constitute use

---

identification unlawfully to produce or obtain any other means of identification, or (ii) the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12." U.S.S.G. § 2B1.1(b)(11).

[4] The full text reads:

"[T]he term 'authentication feature' means any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified[.]" 18 U.S.C. § 1028(d)(1).

of an authentication feature because the forged notary seals used to further the crime were not issued by any state or federal entity or agency, and the deeds on which the forged seals were placed were not identification documents. This position is not supported by the language of the statute.

First, actions by a notary public, including authentication of a signature, are taken based upon the authority of the state. Black's Law Dictionary (9th ed. 2009) defines a "notary public" as a "person authorized by a state to administer oaths, certify documents, attest to the authenticity of signatures, and perform official acts in commercial matters." The state itself is an issuing authority within the statutory definition. "Issuing authority" is defined as "any governmental entity or agency that is authorized to issue identification documents, means of identification, or authentication features." *See* 18 U.S.C. § 1028(d)(6).[5]

The fraudulent seals used here purported to represent certification by a notary public acting under the authority and

---

[5] The full text reads:

"[T]he term 'issuing authority'—

(A) means any governmental entity or agency that is authorized to issue identification documents, means of identification, or authentication features; and

(B) includes the United States Government, a State, a political subdivision of a State, a sponsoring entity of an event designated by the President as a special event of national significance, a foreign government, a political subdivision of a foreign government, or an international government or quasi-governmental organization[.]" 18 U.S.C. § 1028(d)(6).

as an agent of the state of California that the signatures in question were genuine. The state relies upon notarization to confirm the authenticity of a signature on a document to be recorded. When a notary public acts under a state's authority in applying a notary seal, the notary public is properly considered to be acting with the authority of the state, a governmental entity authorized to issue an authentication feature.

Second, although Sardariani may be correct that the deeds of trust were not themselves identification documents, the statute does not require that an authentication feature appear on an identification document. The definition of authentication feature includes features used "on an identification document, document-making implement, *or means of identification*." 18 U.S.C. § 1028(d)(1) (emphasis added). "Means of identification" is further defined in § 1028(d)(7) as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual."

We have previously determined that a signature is a means of identification within the meaning of 18 U.S.C. § 1028(d)(7). *United States v. Blixt*, 548 F.3d 882, 886–88 (9th Cir. 2008). In that case, the defendant was charged with a violation of 18 U.S.C. § 1028A(a)(1) (aggravated identity theft) for forging the signature of her employer on checks written for personal gain. *Id*. at 884–85. Defendant argued that a signature was not a name and, therefore, not a "means of identification" as defined in 18 U.S.C. § 1028(d)(7) (applying to both §§ 1028 and 1028A). The district court foreclosed this theory by instructing the jury that "a signature is a name within the meaning of the phrase 'Means of Identification.'" *Id*. at 885. Defendant appealed, and we

affirmed, holding that "forging another's signature constitutes the use of that person's name and thus qualifies as a 'means of identification.'" *Id*. at 886. Applying *Blixt* to the facts of this case, we conclude that the forged notary seals were used on a means of identification.

In support of his position that authentication features are limited to symbols found on identification documents, Sardariani points to the conference report explaining the purpose of the SAFE ID Act, Pub. L. No. 108-21, § 607, 117 Stat. 650, 689–91 (2003). The proposed statute was described as "addressing the growing trade in illicit authentication feature[s] for IDs." H.R. Conf. Rep. 108-66, *reprinted in* 2003 U.S.C.C.A.N. 683, 702. Yet the statute as enacted was written more broadly than that language in the conference report suggests.

"Absent a clearly expressed legislative intention to the contrary, [the language of the statute] must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n. v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). The conference report refers to the growing trade in fake identification documents as the motivation for proposing the SAFE ID Act, but it does not explicitly limit the act's application to identification documents, and thus it does not override the plain meaning of the statutory text. We "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). The statute itself does not limit the definition of authentication features to those used on identification documents, and we must not either.

Sardariani used forged notary seals in furtherance of the crime: he used them to convince the county recorder's office that the signatures on the falsified documents were genuine. Those forged signatures were means of identification under 18 U.S.C. § 1028(d)(7). *See Blixt*, 548 F.3d at 886–88. The notary seals were, therefore, authentication features applied to means of identification—features which the country recorder's office used "to determine if the document is counterfeit, altered, or otherwise falsified." 18 U.S.C. § 1028(d)(1). Sardariani's use of notary seals to authenticate forged signatures was the use of an authentication feature as defined in § 1028(d)(1). In calculating the advisory guidelines range in this case, the district court correctly applied an enhancement for use of an authentication feature under Sentencing Guidelines § 2B1.1(b)(11)(A)(ii) (formerly § 2B1.1(b)(10)(B)(ii)).

**AFFIRMED**.